**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---

STEVEN LONG, Individually and on Behalf
of All Others Similarly Situated,

        Plaintiff,

v.

STELLANTIS N.V., CARLOS TAVARES,
and NATALIE M. KNIGHT,

        Defendants.

Case No.: 1:24-cv-06196-JHR

Hon. Jennifer H. Rearden

---

**THOMAS TRAPP'S MEMORANDUM OF LAW IN OPPOSITION TO THE**
**COMPETING MOTIONS FOR LEAD PLAINTIFF**

**TABLE OF CONTENTS**

**Page**

I.  PRELIMINARY STATEMENT ....................................................................................... 1

II. ARGUMENT ............................................................................................................... 2

    A.  The PSLRA Process ........................................................................................... 2

    B.  Boston Is Ineligible to Serve as Lead Plaintiff Pursuant to the PSLRA's Restrictions Against Professional Plaintiffs .......................................................................... 3

    C.  Mr. Trapp Is the Presumptive Lead Plaintiff. ..................................................... 7

        1.  *Mr. Trapp Has the Largest Financial Interest.* ............................................ 7

        2.  *Mr. Trapp Meets the Typicality and Adequacy Requirements of Rule 23.* . 8

III. CONCLUSION ............................................................................................................. 9

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allergan* case. *See In re Allergan PLC Sec. Litig.*,
   No. 18-CV-12089, 2020 U.S. Dist. LEXIS 179371 (S.D.N.Y. Sept. 29, 2020) ............... 2, 6, 7

*Allison v. Oakstreet Health, Inc.*,
   No. 1:22-cv-0149 (N.D. Ill.) ............................................................................................ 4

*Aronson v. McKesson HBOC, Inc.*,
   79 F. Supp. 2d 1146 (N.D. Cal. 1999) ........................................................................... 4, 5

*In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.*,
   258 F.R.D. 260, 268 (S.D.N.Y. 2009) ............................................................................ 8, 9

*In re Barclays PLC Securities Litigation*,
   No. 22-cv-8172 (S.D.N.Y.) .............................................................................................. 4

*Baxter v. PDD Holdings Inc. f/k/a Pinduoduo Inc., et al.*,
   No. 1:24-cv-05653 (E.D.N.Y.) ........................................................................................ 4, 7

*Boston Ret. Sys. v. Uber Technologies, Inc., et al.*,
   No. 3:19-cv-06361 (N.D. Cal.) ........................................................................................ 4

*Chahal v. Credit Suisse Grp. AG*,
   Nos. 18-CV-2268 *et al.*, 2018 U.S. Dist. LEXIS 104185 (S.D.N.Y. June 21, 2018) ........... 1, 7

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
   No. 03-1027 Section "F", 2003 U.S. Dist. LEXIS 25264 (E.D. La. Aug. 28, 2003) ........ 4, 5, 6

*City of Fort Lauderdale Police and Firefighters Retirement System v. Pegasystems Inc.*,
   No. 22-cv-11220 (D. Mass.) ............................................................................................ 4

*In re Comverse Tech., Inc. Sec. Litig.*,
   No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028  (E.D.N.Y. Mar. 2, 2007) ........................... 7

*In re Enron Corp., Sec. Litig.*,
   206 F.R.D. 427 (S.D. Tex. 2002) .................................................................................... 5, 6

*Faris v. Longtop Fin. Techs. Ltd.*,
   No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec.
   L. Rep. (CCH) P96,562 (S.D.N.Y. Oct. 4, 2011) ................................................................ 8

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization,
   LLC*,
   616 F. Supp. 2d 461 (S.D.N.Y. 2009) .............................................................................. 3

*Lemm, Jr. v. New York Community Bancorp, Inc.,*
    No. 24-cv-903 (E.D.N.Y.) ............................................................................................. 4, 7

*Long v. Stellantis N.V., et al.*
    No. 24-cv-06196 (S.D.N.Y.) ............................................................................................... 4

*Nyy v. Telefonakiebolaget LM Ericsson,*
    No. 1:22-cv-1167 (E.D.N.Y.) ............................................................................................. 4

*Plumbers & Pipefitters Local 562 Pension Fund v. MGIC Inv. Corp.,*
    256 F.R.D. 620 (E.D. Wis. 2009) ....................................................................................... 7

*Shapiro v. TG Therapeutics, Inc.,*
    No. 22-cv-6106 (S.D.N.Y.) ................................................................................................ 4

*In re Silvergate Capital Corporation Securities Litigation,*
    No. 22-cv-1936 (S.D. Cal) ................................................................................................. 4

*Stengle v. Am. Ital. Pasta Co.,*
    No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816 (W.D. Mo. Dec. 19, 2005)............ 5

*In re Telxon Corp. Sec. Litig.,*
    67 F. Supp. 2d 803 (N.D. Ohio 1999)................................................................................. 5, 6

*Thompson v. Shaw Group, Inc.,*
    No. 04-1685 Section "C" (1), 2004 U.S. Dist. LEXIS 25641 (E.D. La. Dec. 13, 2004).......... 5

*In re Unumprovident Corp. Sec. Litig.,*
    No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) ..................... 5, 6

*Vazquez v. Masimo Corporation,*
    No. 23-cv-1546 (S.D. Cal.)................................................................................................. 4

**Statutes**

15 U.S.C. §78u-4 ............................................................................................................ *passim*

## I.    PRELIMINARY STATEMENT

This securities fraud class action is governed by the Private Securities Litigation Reform Act of 1995 ("PSLRA"), which requires courts at the outset to appoint a "lead plaintiff" and "lead counsel" to oversee and conduct the litigation. 15 U.S.C. §78u-4(a)(3). The role of "lead plaintiff" is important insofar as the individuals appointed are trusted with overseeing their lawyers and serving in a fiduciary capacity to act in the best interests of their fellow class members. To aid courts in their decision, the PSLRA provides a straightforward process for assessing the competing applicants. It gives preference to the movant with the "largest financial interest" in the action and otherwise satisfies the typicality and adequacy requirements of Rule 23. This preference or presumption can only be rebutted by actual "proof" that the presumptive lead plaintiff will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II).

In this District, Courts routinely consider a movant's claimed loss as most determinative. *Chahal v. Credit Suisse Grp. AG,* Nos. 18-CV-2268 *et al*., 2018 U.S. Dist. LEXIS 104185, at *12 (S.D.N.Y. June 21, 2018). Thomas Trapp ("Mr. Trapp") is the presumptive lead plaintiff as he has the largest financial interest of any movant who ***also*** satisfies the Rule 23 requirements**.** Mr. Trapp suffered a loss of $141,994.88 from trading in Stellantis N.V. securities. He is a sophisticated businessman with twenty-five years of experience trading in securities and easily meets the typicality and adequacy requirements of Rule 23.

Only one movant, the Boston Retirement System ("Boston"), claims larger losses than Mr. Trapp. However, Boston's actions warrant careful scrutiny. It presently serves and/or sought to serve as lead plaintiff in 11 cases within the past three years. This renders Boston a repeat filer in violation of the PSLRA's bar against "professional plaintiffs." *See* 15 U.S.C. §78u-4(A)(3)(B)(vi).

The PSLRA's bar against "professional plaintiffs" arises from the reality that a plaintiff (including an institutional investor) cannot provide adequate oversight to a case if his, her, or its resources are spread too thin. Boston's oversight in the cases it presently has is already in doubt based on its public meeting minutes over the past year. Indeed, despite being involved in eight cases as the lead plaintiff and/or class representative, Boston's monthly meeting minutes indicate zero discussion over the cases.

Appointing Boston as the lead plaintiff in this case would place it at risk and subject it to unnecessary danger. This argument is not speculation but instead based on Boston's recent track-record, namely its failure to properly oversee counsel in the *Allergan* case. *See In re Allergan PLC Sec. Litig.*, No. 18-CV-12089, 2020 U.S. Dist. LEXIS 179371 (S.D.N.Y. Sept. 29, 2020). Despite being told by the court it could rely on only one firm to serve as lead counsel, Boston retained two firms and was subsequently disqualified from serving as class representative. Boston has gone on to serve as lead counsel in a handful of cases since *Allergan*, only adding to its inability to properly monitor and oversee its lawyers. Accordingly, the Court should reject Boston's motion and grant Mr. Trapp's motion in its entirety.

## II.     ARGUMENT

### A.     The PSLRA Process.

The PSLRA sets forth the procedure for the selection of a Lead Plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1). Following the required notice announcing the class action, class members interested in serving as Lead Plaintiff are required to file a motion seeking appointment within 60 days thereafter. 15 U.S.C. §78u-4(a)(3)(A)(i). This straightforward leadership selection provides that the "person or group of persons" with the largest loss is the presumptive lead plaintiff and must be appointed lead so long as it is otherwise adequate

and typical within the meaning of Rule 23. 15 U.S.C. §78u–4(a)(3)(B)(i) and (iii)(I)(bb)-(cc).

Congress created the lead plaintiff presumption because it believed that the movant with the largest

loss would be most incentivized to actively prosecute the securities class action and monitor

counsel:

> Further, the provisions created a "rebuttable presumption" that the most "adequate plaintiff" is, inter alia, the person or group of persons that "has the largest financial interest in the relief sought by the class." "The theory of these provisions was that if an investor with a large financial stake in the litigation was made lead plaintiff, such a plaintiff – frequently a large institution or otherwise sophisticated investor – would be motivated to act like a 'real' client, carefully choosing counsel and monitoring counsel's performance to make sure that adequate representation was delivered at a reasonable price."[1]

*Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,

616 F. Supp. 2d 461, 464 (S.D.N.Y. 2009).

After a presumptively most adequate plaintiff is identified, the Court must then determine

if the presumption has been rebutted through "proof" by a member of the purported plaintiff class

that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests

of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately

representing the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II). If the presumption is not rebutted, the

presumptively most adequate plaintiff should be appointed as lead plaintiff.

    **B.**    **Boston Is Ineligible to Serve as Lead Plaintiff Pursuant to the PSLRA's Restrictions Against Professional Plaintiffs.**

The PSLRA states: "Except as the court may otherwise permit, consistent with the purposes

of this section, a person may be a lead plaintiff, or an officer, director, or fiduciary of a lead

plaintiff, in no more than 5 securities class actions brought as plaintiff class actions pursuant to the

Federal Rules of Civil Procedure during any 3-year period." 15 U.S.C. §78u-4(a)(3)(B)(vi); *see*

---

[1] Unless otherwise noted, citations are omitted, and emphasis is added.

*also Aronson v. McKesson HBOC, Inc.,* 79 F. Supp. 2d 1146, 1156 (N.D. Cal. 1999) (provision "creat[es] a rebuttable presumption that the same plaintiff should not direct more than five securities class actions in three years" and barring institution from service as lead plaintiff). In violation of this rule, Boston is presently serving, seeking to serve, or sought to serve as a lead plaintiff and/or class representative in 11 securities class actions. These actions are:

| Case Name | Status |
|---|---|
| *Allison v. Oakstreet Health, Inc.* <br> No. 1:22-cv-0149 (N.D. Ill.) | Lead Plaintiff |
| *Nyy v. Telefonakiebolaget LM Ericsson* <br> No. 1:22-cv-1167 (E.D.N.Y.) | Lead Plaintiff |
| *Lemm, Jr. v. New York Community Bancorp, Inc.* <br> No. 24-cv-903 (E.D.N.Y.) | Lead Plaintiff |
| *Vazquez v. Masimo Corporation* <br> No. 23-cv-1546 (S.D. Cal.) | Lead Plaintiff |
| *In re Silvergate Capital Corporation Securities Litigation* <br> No. 22-cv-1936 (S.D. Cal) | Lead Plaintiff |
| *In re Barclays PLC Securities Litigation* <br> No. 22-cv-8172 (S.D.N.Y.) | Lead Plaintiff |
| *Shapiro v. TG Therapeutics, Inc.* <br> No. 22-cv-6106 (S.D.N.Y.) | Lead Plaintiff |
| *Boston Ret. Sys. v. Uber Technologies, Inc., et al.* <br> No. 3:19-cv-06361 (N.D. Cal.) | Lead Plaintiff |
| *City of Fort Lauderdale Police and Firefighters Retirement System v. Pegasystems Inc.* <br> No. 22-cv-11220 (D. Mass.) | Movant for Lead Plaintiff |
| *Baxter v. PDD Holdings Inc. f/k/a Pinduoduo Inc., et al.* <br> No. 1:24-cv-05653 (E.D.N.Y.) | Movant for Lead Plaintiff |
| *Long v. Stellantis N.V., et al.* <br> No. 24-cv-06196 (S.D.N.Y.) | Movant for Lead Plaintiff |

A "primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs, who may not adequately monitor numerous litigations and counsel simultaneously." *Chiaretti v. Orthodontic Ctrs. of Am., Inc.,* No. 03-1027 Section "F", 2003 U.S. Dist. LEXIS 25264, at *5 (E.D. La. Aug. 28, 2003) (disqualifying institution overseeing six securities class actions from service as lead plaintiff). In light of this premise, it is not surprising that the PSLRA expressly bars repeat plaintiffs. 15 U.S.C. §78u-4(a)(3)(B)(vi). While "involvement in numerous other securities

4

fraud [cases] . . . may demonstrate valuable experience and quality leadership, it also means fractured attention and resources with respect to this suit." *In re Enron Corp., Sec. Litig.,* 206 F.R.D. 427, 457 (S.D. Tex. 2002). "[A]n institutional investor that is simultaneously involved in one or more other securities class actions would have fewer resources available and be less able to police its attorney's conduct." *In re Telxon Corp. Sec. Litig.,* 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999).

Boston's status as a "professional plaintiff" is concerning. Upon review of Boston's 2024 meeting minutes, Natacha Thomas, General Counsel for the Boston Retirement Board, consistently states that there are "no legal issues to discuss" or "no legal update." *See* Exhibit A, Minutes of Boston Retirement Board. As lead plaintiff in *eight* different securities cases, it is unclear why these cases are not discussed at Boston's monthly meetings, showing that Boston is spread too thin to provide the adequate attention they deserve. *See*, *e.g.*, *In re Unumprovident Corp. Sec. Litig.*, No. 1:03-CV-049, 2003 U.S. Dist. LEXIS 24633, at *21-22 (E.D. Tenn. Nov. 6, 2003) (the "larger the number of cases being directed by a single institutional investor, the less likely it is these purposes are being served," *i.e.*, "cure perceived abuses of securities class actions by wresting control of such actions from professional plaintiffs and overly-aggressive attorneys").[2]

---

[2] *See also Stengle v. Am. Ital. Pasta Co.*, No. 05-0725-CV-W-ODS, 2005 U.S. Dist. LEXIS 43816, at *19-20 (W.D. Mo. Dec. 19, 2005) (excluding pension fund because it was "currently serving as a lead plaintiff in at least six actions and is therefore defined as a 'professional plaintiff' whose application to be lead plaintiff is disfavored by the statute"); *Thompson v. Shaw Group, Inc.*, No. 04-1685 Section "C" (1), 2004 U.S. Dist. LEXIS 25641, at *22 (E.D. La. Dec. 13, 2004) (disqualifying pension fund because "there is a risk of overstretch where [the fund] would be directing a total of eight concurrent lawsuits"); *Unumprovident Corp.*, 2003 U.S Dist. LEXIS 25633, at *22 (denying motion by pension fund that had served in thirteen cases); *Orthodontic Ctrs. of Am., Inc.*, 2003 U.S. Dist. LEXIS 25264, at *6 (disqualifying pension fund from serving as lead plaintiff where its "general counsel currently oversees at least six large securities class actions"); *Telxon Corp.*, 67 F. Supp. 2d 803, 819-22 (holding that pension fund "cannot serve as lead plaintiff" because it "has served as lead plaintiff in five securities class actions"); *McKesson*,

5

Having served as lead plaintiff in eight cases filed in the last three years alone, not including the additional three actions in which Boston has sought or is seeking to serve as lead plaintiff, there is no indication that it will be able to adequately oversee this case if given the opportunity. Without anything in the record to warrant otherwise, the Court should deny Boston's motion pursuant to the PSLRA's restriction against "professional plaintiffs" rule, which prohibits a movant from serving as a lead plaintiff in more than five cases in any three-year period. *See* 15 U.S.C. §78u-4(A)(3)(B)(vi). Importantly, the PSLRA "places the burden on the [presumptively barred institution] to demonstrate why the bar should not be applied." *Telxon Corp.*, 67 F. Supp. 2d 803, 820; *Unumprovident Corp.,* 2003 U.S. Dist. LEXIS 24633, at \*20. Boston has failed to carry its burden in this regard. *See Orthodontic Ctrs. Of Am., Inc.,* 2003 U.S. Dist. LEXIS 25264, at \*5 (the "primary tenet of the PSLRA is to protect a class from representation by repeat plaintiffs, who ***may not*** adequately monitor numerous litigations and counsel simultaneously."); *see also Enron Corp.,* 206 F.R.D. 427, 457 (recognizing that while "involvement in numerous other securities fraud [cases], both as Lead Plaintiff and class participant, may demonstrate valuable experience and quality leadership, it also means ***fractured attention and resources*** with respect to this suit").

The *Allergan* case further proves Boston's inability to effectively manage litigation. In that case, the court determined that Boston failed to oversee and monitor counsel by failing to reveal to the court that it had retained the counsel of two law firms.  Boston's inability or refusal to control its counsel in that case deeply prejudiced the class, given the court's refusal to certify it as class representative and forcing new counsel to enter into the case at a crucial point in the litigation. "Either [Boston] did not really acquiesce in my directive, or it is incapable of controlling its

---

79 F. Supp. 2d 1146, 1156 (holding that pension fund was "presumptively barred from serving as lead plaintiff" as it was "'currently serving as a lead plaintiff or co-lead plaintiff in six such actions'").

lawyers when they prove unwilling to abide by rulings of the court concerning who could serve as lead counsel. It doesn't matter which of those two things is true: either renders [Boston] an inadequate class representative, notwithstanding its significant holdings in Allergan and its status as an institutional investor." *In re Allergan PLC Sec. Litig.*, 2020 U.S. Dist. LEXIS 179371, at *24 (S.D.N.Y. Sep. 29, 2020). The court went on to decide that, "the conduct of [Boston] and its counsel raises issues sufficient for this Court to deny certification of a class with [Boston] as its representative." *Id*. at *25.

Had Boston been able to focus its resources on a reasonable number of cases, perhaps it would have been able to adequately oversee its counsel and prevent them from running afoul of the court's directives. Since *Allergan*, Boston has taken on even more cases (including its recent appointment in *Lemm v. New York Community Bank*) and seeks to serve as lead plaintiff in others too (including *Baxter v. PDD Holdings Inc. f/k/a Pinduoduo Inc.* for which the lead plaintiff motion was filed the same day as the motion in this case). Allowing Boston to serve as lead counsel in this case would violate the PSLRA's restrictions against "professional plaintiffs" and unnecessarily risk prejudicing the class in this case.

### C.    Mr. Trapp Is the Presumptive Lead Plaintiff.

#### 1.    *Mr. Trapp Has the Largest Financial Interest.*

Once Boston is disqualified, Mr. Trapp becomes the presumptive lead plaintiff. While the PSLRA does not define "financial interest," Courts in the second Circuit and this District, typically find that the amount of financial loss claimed by a lead plaintiff movant is the most significant factor to be considered. *See, e.g., In re Comverse Tech., Inc. Sec. Litig.,* No. 06-CV-1825, 2007 U.S. Dist. LEXIS 3028, at *16 (E.D.N.Y. Mar. 2, 2007) (recognizing that most courts consider "the approximate loss a plaintiff suffered during the class period to be most influential in identifying the plaintiff with the largest financial interest"); *Chahal,* 2018 U.S. Dist. LEXIS

7

104185, at *12) (equating financial interest with economic loss). Courts will also consider other factors when determining a movant's financial interest, if necessary, such as retained shares, and funds expended.

| Movant | Gross Shares Purchased | Net Shares Retained | Funds Expended | Claimed Loss |
|---|---|---|---|---|
| Thomas Trapp | 14,401 | 14,401 | $364,422.11 | $141,994.88 |
| Gregory Rikard | 8,000 | 8,000 | $206,400.00 | $82,838.00 |
| City of North Miami Beach General Employees' Retirement Plan, and Retirement Plan for Police Officers & Firefighters of the City of North Miami Beach | 5,869 | 5,869 | $134,071.21 | $42,637.92 |
| Mark Lim | 2,215 | 2,215 | $49,835.68 | $21,506.53 |

As demonstrated above, Mr. Trapp possesses the largest financial interest before the Court, as he suffered the largest loss, purchased the most shares, retained the most shares, and expended the most funds out of the remaining movants.

### 2.    *Mr. Trapp Meets the Typicality and Adequacy Requirements of Rule 23.*

In addition to possessing the greatest financial interest, Mr. Trapp satisfies the adequacy and typicality requirements of Rule 23. "At the lead plaintiff stage of the litigation, in contrast to the class certification stage, 'a proposed lead plaintiff need only make a 'preliminary showing that it will satisfy the typicality and adequacy requirements of Rule 23.'" *Faris v. Longtop Fin. Techs. Ltd.,* No. 11 Civ. 3658 (SAS); 11 Civ. 3661 (SAS), 2011 U.S. Dist. LEXIS 112970, Fed. Sec. L. Rep. (CCH) P96,562, at *12 (S.D.N.Y. Oct. 4, 2011) (quoting *In re Bank of Am. Corp. Sec. Derivative & ERISA Litig.,* 258 F.R.D. 260, 268 (S.D.N.Y. 2009)). "Typicality 'requires that the claims of the class representatives be typical of those of the class and is satisfied when each class

member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability.'" *Id*. "The adequacy requirement is satisfied where the proposed Lead Plaintiff does not have interests that are antagonistic to the class that [he] seeks to represent and has retained counsel that is capable and qualified to vigorously represent the interests of the class." *Id*. (ellipsis omitted).

As set forth in greater detail in his initial memorandum in support of the instant motion (the "Opening Brief") (ECF No. 7), Mr. Trapp's claims are based on the same legal theories and arise from the same event or practice or course of conduct that gives rise to the claims of other class members. Further, Mr. Trapp considers himself to be a sophisticated investor, having been investing in the stock market for 25 years. *Id*. at p. 8. He resides in Rock Spring, Wyoming and is the owner of Insulation Incorporated, which was established in 1978. *Id*. Likewise, Mr. Trapp's certification pursuant to the federal securities laws, (ECF No. 8-1) and his selection of experienced and capable counsel in Levi & Korsinsky (ECF No. 8-4) demonstrate that Mr. Trapp does not have interests antagonistic to the class and will adequately represent the interests of the proposed class. Accordingly, Mr. Trapp has made a preliminary showing that he satisfies the adequacy and typicality requirements of Rule 23.

As Mr. Trapp has the largest financial interest in the litigation and satisfies the adequacy and typicality requirements of Rule 23, he is entitled to the presumption of being the "most adequate plaintiff" to represent the Class.

## III.   CONCLUSION

For the foregoing reasons, Mr. Trapp respectfully requests that the Court grant his Motion and enter an Order: (1) appointing Movant as Lead Plaintiff, (2) approving his selection of Levi & Korsinsky as Lead Counsel for the Class, and (3) granting such other relief as the Court may deem

just and proper.


Dated: October 29, 2024                        Respectfully Submitted,

                                               **LEVI & KORSINSKY, LLP**

                                               By: */s/ Adam M. Apton*
                                               Adam M. Apton (AS-8383)
                                               33 Whitehall Street, 17th Floor
                                               New York, NY 10004
                                               Tel: (212) 363-7500
                                               Fax: (212) 363-7171
                                               Email: aapton@zlk.com

                                               *Lead Counsel for Thomas Trapp and*
                                               *[Proposed] Lead Counsel for the Class*

10