**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| STEVEN LONG, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> STELLANTIS N.V., CARLOS TAVARES, and NATALIE M. KNIGHT, <br><br> Defendants. | Case No. 1:24-cv-06196-JHR <br><br> <u>CLASS ACTION</u> |

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE MOTION OF BOSTON RETIREMENT SYSTEM FOR APPOINTMENT AS LEAD PLAINTIFF <u>AND APPROVAL OF ITS SELECTION OF LEAD COUNSEL</u>**

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

PRELIMINARY STATEMENT .......................................................................................... 1

ARGUMENT ........................................................................................................................ 3

    A.    Boston Is The Presumptive Lead Plaintiff ................................................................ 3

    B.    The Presumption Has Not Been Rebutted ................................................................ 4

        1.    The 5-in-3 Provision Does Not Apply To Institutional Investors ............... 4

        2.    Even If The Provision Applied To Institutional Investors, It Does Not Bar The Appointment Of Boston ................................................................ 6

CONCLUSION ................................................................................................................... 10

i

## TABLE OF AUTHORITIES

**Cases**                                                                                          **Page(s)**

*In re Allergan PLC Sec. Litig.*,
  2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020)..........................................................................10

*Aronson v. McKesson HBOC, Inc.*,
  79 F. Supp. 2d 1146 (N.D. Cal. 1999) .....................................................................................5

*In re Boeing Co. Aircraft Sec. Litig.*,
  2019 WL 6052399 (N.D. Ill. Nov. 15, 2019) ...........................................................................5

*Boston Ret. Sys. v. Uber Techs., Inc.*,
  2022 WL 2954937 (N.D. Cal. July 26, 2022)..........................................................................10

*Chiaretti v. Orthodontic Ctrs. of Am., Inc.*,
  2003 WL 27391614 (E.D. La. Aug. 28, 2003) .........................................................................8

*City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*,
  2019 WL 364570 (S.D.N.Y. Jan. 30, 2019) .............................................................................3

*Cohen v. Luckin Coffee Inc.*,
  2020 WL 3127808 (S.D.N.Y. June 12, 2020) ..........................................................................7

*In re Diamond Foods, Inc., Sec. Litig.*,
  281 F.R.D. 405 (N.D. Cal. 2012)..........................................................................................7, 8

*In re Enron Corporation Sec. Litig.*,
  206 F.R.D. 427 (S.D. Tex. 2002) .............................................................................................6

*In re Extreme Networks Inc. Sec. Litig.*,
  2016 WL 3519283 (N.D. Cal. June 28, 2016).......................................................................5, 9

*In re Facebook, Inc., IPO Sec. & Derivative Litig.*,
  288 F.R.D. 26 (S.D.N.Y. 2012) ...........................................................................................1, 4

*In re Fannie Mae Sec. Litig.*,
  355 F. Supp. 2d 261 (D.D.C. 2005) .........................................................................................5

*Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*,
  616 F. Supp. 2d 461 (S.D.N.Y. 2009).................................................................................4, 6, 9

*Kuriakose v. Fed. Home Loan Mortg. Co.*,
  2008 WL 4974839 (S.D.N.Y. Nov. 24, 2008).........................................................................2

*Lemm v. New York Cmty. Bancorp, Inc.*,
  2024 WL 2022213 (E.D.N.Y. May 7, 2024) ..........................................................................10

*In re Mersho*,
   6 F. 4th 891 (9th Cir. 2021) ....................................................................................4

*Nakamura v. BRF S.A.*,
   2018 WL 3217412 (S.D.N.Y. July 2, 2018) ............................................................6

*In re Netflix, Inc. Sec. Litig.*,
   2012 WL 1496171 (N.D. Cal. Apr. 27, 2012) .........................................................5

*Omdahl v. Farfetch Ltd.*,
   2020 WL 3072291 (S.D.N.Y. June 10, 2020) ..........................................................1

*In re Pfizer Inc. Sec. Litig.*,
   233 F.R.D. 334 (S.D.N.Y. 2005) ...........................................................................5

*Ragan v. AppHarvest, Inc.*,
   2021 WL 5909116 (S.D.N.Y. Dec. 13, 2021) .....................................................2, 4

*Rasella v. Musk*,
   342 F.R.D. 74 (S.D.N.Y. 2022) .................................................................... *passim*

*Shapiro v. TG Therapeutics, Inc.*,
   2022 WL 16555585 (S.D.N.Y. Oct. 31, 2022) .......................................................10

*Stengle v. Am. Ital. Pasta Co.*,
   2005 WL 8159083 (W.D. Mo. Dec. 19, 2005) .........................................................9

*In re Telxon Corp. Sec. Litig.*,
   67 F. Supp. 2d 803 (N.D. Ohio 1999)......................................................................8

*Thompson v. The Shaw Grp. Inc.*,
   2004 WL 2988503 (E.D. La. Dec. 14, 2004).............................................................9

*In re Unumprovident Corp. Sec. Litig.*,
   2003 U.S. Dist. LEXIS 24633 (E.D. Tenn. Nov. 6, 2003) .......................................8

*In re Vicuron Pharms., Inc. Sec. Litig.*,
   225 F.R.D. 508 (E.D. Pa. 2004)...............................................................................5

*In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*,
   2010 WL 4272567 (W.D. Wash. Oct. 12, 2010) ...................................................10

**Statutes**

15 U.S.C. § 78u-4 *et seq.* ................................................................................1, 2, 3, 4

**Other Authorities**

H.R. Conf. Rep. No. 104-369 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730 (1995)......................5

## PRELIMINARY STATEMENT

There is no dispute that Boston has the largest financial interest in this case.[1]  Boston incurred a loss of over $1.42 million on its investments in Stellantis stock during the Class Period—*ten* times larger than the loss reported by the sole remaining competing movant, Trapp.[2] Trapp concedes that Boston has the largest financial interest.  *See* ECF No. 27 at 1.  Moreover, Boston—a sophisticated institutional investor with extensive experience overseeing the prosecution of securities class actions—has demonstrated that it satisfies the typicality and adequacy requirements of Rule 23.  Accordingly, Boston is entitled to the strong presumption that it is the "most adequate plaintiff."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).

Trapp is unable to rebut that presumption by providing the "exacting proof" the PSLRA requires to demonstrate that Boston is inadequate to lead this case.  *In re Facebook, Inc., IPO Sec. & Derivative Litig.*, 288 F.R.D. 26, 40 (S.D.N.Y. 2012).  Instead, Trapp offers baseless speculation that Boston is too busy with other matters to effectively lead this case.  Such speculation is plainly insufficient under the PSLRA, and Trapp misconstrues both the facts and law in making this argument.  *See Rasella v. Musk*, 342 F.R.D. 74, 84 (S.D.N.Y. 2022) (rejecting competing movant's contention that presumptive lead plaintiff was "spread too thin" across other securities litigation as "impermissible speculation").  Indeed, Trapp's unsupported suppositions are belied by Boston's long and successful track record of serving as a lead plaintiff in securities class actions and

---

[1] All capitalized terms are defined in Boston's opening and opposition briefs, unless otherwise indicated.  *See* ECF Nos. 18, 29.  All emphasis is added, and all internal citations omitted unless noted.

[2] The other investors that filed motions seeking appointment as Lead Plaintiff do not oppose the appointment of Boston.  Rikard filed a statement of non-opposition.  *See* ECF No. 25.  The North Miami Beach Funds withdrew their motion.  *See* ECF No. 26.  Lim did not file any opposition, and thus has abandoned his motion.  *See Omdahl v. Farfetch Ltd.*, 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (deeming lead plaintiff motion "abandoned" where movant "failed to file an opposition to [a competing] motion").

recovering over $760 million for the investor classes it was appointed to represent. Trapp's contentions are further contradicted by the declaration of Boston's Executive Officer.[3]

In any event, the overwhelming body of case law holds that institutional investors like Boston are not precluded from serving as lead plaintiff in multiple securities class actions under the PSLRA's "5-in-3 provision," or the so-called "professional plaintiff" bar. *See, e.g.*, *Kuriakose v. Fed. Home Loan Mortg. Co.*, 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("[A]s an institutional investor, [movant] is not subject to the [PSLRA]'s strict ban on 'professional plaintiffs[.]'"). Courts uniformly recognize that Congress did not intend to limit institutional investors that have the incentive, resources, and experience to serve as lead plaintiff. Instead, the PSLRA—which was expressly intended to increase participation of institutional investors as lead plaintiff—precludes ***individual*** investors from serving as lead plaintiff in more than five cases filed within a three-year period. *See Ragan v. AppHarvest, Inc.*, 2021 WL 5909116, at *8 n.6 (S.D.N.Y. Dec. 13, 2021) ("As the legislative history reflects, institutional investors did not represent the type of professional plaintiff the 5-in-3 rule sought to restrict."). Trapp ignores the controlling case law, and fails to cite a single case from this Circuit in support of his argument.

Even if this statutory provision did apply to Boston, the plain language of the PSLRA gives this Court discretion in its application. *See* 15 U.S.C. § 78u-4(a)(3)(B)(vi); *see also Musk*, 342 F.R.D. at 82 ("[C]ourts have repeatedly excepted institutional investors from [the 5-in-3 provision] in order to reflect the [PSLRA]'s purposes[.]") (collecting cases). Boston's proven history of obtaining substantial recoveries for investors in securities class actions, including when it was actively supervising other securities class actions, provides ample justification for the Court to appoint Boston as Lead Plaintiff in this action. *See* Smyth Decl. ¶ 6. Moreover, of the seven cases

---

[3] *See* Declaration of Timothy J. Smyth in Support of the Motion of Boston Retirement System for Appointment as Lead Plaintiff and Approval of Its Selection of Lead Counsel (the "Smyth Decl."), filed herewith.

brought in the previous three years in which Boston has been appointed lead plaintiff, two have reached settlements and two were dismissed. As such, Boston is currently leading just three active cases that were filed in the past three years. In two of those cases, Boston is co-lead plaintiff, working with other institutional investors to jointly supervise the litigation. In addition, Boston's Executive Officer, together with Boston's General Counsel, actively oversee all outside counsel retained by or on behalf of Boston in securities litigation. *See id*. ¶ 5. Boston is committed to devoting the necessary resources, personnel, and attention to each securities class action in which it has an active role. *See id*. ¶¶ 5, 10. Thus, Boston has the experience and resources to vigorously prosecute this case.

Because Trapp falls far short of offering any "proof" to rebut the strong statutory presumption to which Boston is entitled, his contentions fail. Accordingly, Boston should be appointed as Lead Plaintiff and its motion should otherwise be granted.

## ARGUMENT

### A. Boston Is The Presumptive Lead Plaintiff

The PSLRA establishes a strong presumption that the Lead Plaintiff is the movant that "has the largest financial interest in the relief sought by the class" and "otherwise satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). Here, it is undisputed that Boston has the largest financial interest in the relief sought by the Class, having incurred a significantly larger loss, purchased more shares of Stellantis stock, and expended more net funds than Trapp. *See City of Riviera Beach Gen. Emps. Ret. Sys. v. Macquarie Infrastructure Corp.*, 2019 WL 364570, at *4 (S.D.N.Y. Jan. 30, 2019) ("The magnitude of the loss is the most significant factor."); *see also* ECF No. 27 at 1 (Trapp conceding Boston has "larger losses").

3

Boston also satisfies the typicality and adequacy requirements of Rule 23 because it is a sophisticated institutional investor which manages approximately $7.4 billion in assets, has more than adequate resources available to devote to this litigation, and has extensive experience serving as a lead plaintiff in securities class actions. *See* Smyth Decl. ¶¶ 3, 5-7; *see also* ECF Nos. 18 at 6-9; 29 at 5-6. Accordingly, Boston is the presumptive Lead Plaintiff.[4]

### B.    The Presumption Has Not Been Rebutted

The presumption in favor of appointing Boston as Lead Plaintiff can only be rebutted by "exacting proof" that Boston is an atypical or inadequate Class representative. *See Facebook*, 288 F.R.D. at 40 (referencing the "exacting proof needed to rebut the PSLRA's presumption"). Trapp has not presented any evidence, let alone "proof," that would rebut the presumption.

### 1.    The 5-in-3 Provision Does Not Apply To Institutional Investors

Trapp claims that Boston is barred from serving as Lead Plaintiff in this case based on the PSLRA's 5-in-3 provision. *See* ECF No. 27 at 3. That provision states: "***[e]xcept as the court may otherwise permit***, consistent with the purposes of this section, a person may be a lead plaintiff . . . in no more than 5 securities class actions brought as plaintiff class actions . . . during any 3-year period." 15 U.S.C. § 78u-4(a)(3)(B)(vi).

Consistent with the statute's plain language and purpose, however, nearly every court that has been presented with an argument challenging an institutional investor under this provision over the past 15-plus years has refused to disqualify the institutional investor. *See, e.g.*, *Musk*, 342 F.R.D. at 83 (appointing institutional investor over 5-in-3 argument); *AppHarvest*, 2021 WL 5909116, at *8 n.6 (same); *Iron Workers Loc. No. 25 Pension Fund v. Credit-Based Asset*

---

[4] A court's determination of whether a movant has made a preliminary showing of typicality and adequacy "should be based only on the movant's pleadings and declarations," and does not consider arguments made by competing movants. *In re Mersho*, 6 F. 4th 891, 899 (9th Cir. 2021). The process "turns adversarial" only after the presumption attaches. *Id*.

*Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) (same).[5]  This

overwhelming body of law, which is conspicuously absent from Trapp's brief, correctly recognizes

that the PSLRA was specifically enacted to "encourage" the appointment of institutional investors.

H.R. Conf. Rep. No. 104-369, at *32 (1995), *reprinted in* 1995 U.S.C.C.A.N. 730, 731 (1995) (the

"Conference Report").

The Conference Report is clear: "professional plaintiffs" are "*[i]ndividuals* who are

motivated by the payment of a bounty" and "who own a nominal number of shares in a wide array

of public companies." *Id*. at *32-33.  Applying this provision to institutions like Boston would be

contrary to the overarching purpose of the PSLRA, particularly where, as here, Boston has such a

vastly larger financial interest than Trapp.  *See, e.g.*, *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334,

338 n.4 (S.D.N.Y. 2005) (finding 5-in-3 argument was "without merit" because the "provision was

not intended to target institutional investors"); *In re Netflix*, *Inc. Sec. Litig.*, 2012 WL 1496171, at

*6 (N.D. Cal. Apr. 27, 2012) (refusing to apply the 5-in-3 provision to Boston, noting the argument

"that this very experience disqualifies [institutional investors] as professional plaintiffs. . . .

misapprehends both the spirit and the letter of the PSLRA").  As a sophisticated institution, the 5-

in-3 provision does not apply to Boston.

Trapp relies entirely on out-of-Circuit outlier cases that are at least two decades old to argue

against the vast authority that rejects his argument.  In addition, Trapp's cited authority has been

subsequently rejected, or is distinguishable.  For example, *Aronson v. McKesson HBOC, Inc.*, 79

F. Supp. 2d 1146 (N.D. Cal. 1999), has not been followed in its own district.  *See, e.g.*, *Extreme*

*Networks*, 2016 WL 3519283, at *5 ("[I]n the decade and a half since *Aronson*, all [of the cases in

---

[5] *See also In re Boeing Co. Aircraft Sec. Litig.*, 2019 WL 6052399, at *8 (N.D. Ill. Nov. 15, 2019) (appointing institutional investor over 5-in-3 argument); *In re Extreme Networks Inc. Sec. Litig.*, 2016 WL 3519283, at *8 (N.D. Cal. June 28, 2016) (same); *In re Fannie Mae Sec. Litig.*, 355 F. Supp. 2d 261, 264 (D.D.C. 2005) (same); *In re Vicuron Pharms., Inc. Sec. Litig.*, 225 F.R.D. 508, 512 (E.D. Pa. 2004) (same).

the Northern District of California] have held that [the 5-in-3 provision] is not a bar to institutional investors—and with good reason.") (collecting cases). In *In re Enron Corporation Securities Litigation*, 206 F.R.D. 427 (S.D. Tex. 2002), the court noted that the action was "probably the largest and most complex of its kind in the history of this country and it will demand the full focus of Lead Plaintiff(s) and Lead Counsel." *Id*. at 457. Considering the demands of that historic case, the court, in its discretion, disqualified an institutional investor that served as lead plaintiff in nine securities actions because there were "other competent and qualified institutional applicants" with 10-figure losses. *Id*. at 456-57. This case, however significant, is not *Enron*, and the facts that led the court in *Enron* to apply the 5-in-3 provision to an institutional investor are not present here.

Trapp is of course aware that his argument runs contrary to the weight of authority. Indeed, the third page of Trapp's brief cites a case that directly contradicts his argument. Trapp cites *Iron Workers* to demonstrate the Congressional intent behind the PSLRA. *See* ECF No. 27 at 3. In that case, Judge Rakoff refused to apply the 5-in-3 provision to an institutional investor, and appointed as lead plaintiff a public pension fund that was involved in fifteen securities class actions. *See Iron Workers*, 616 F. Supp. 2d at 466-67 (collecting cases). Trapp neither acknowledges Judge Rakoff's holding nor attempts to distinguish it.

### 2.    Even If The Provision Applied To Institutional Investors, It Does Not Bar The Appointment Of Boston

The PSLRA expressly grants this Court discretion to appoint an investor despite its service as a lead plaintiff in more than five securities class actions filed during a three-year period. *See Iron Workers*, 616 F. Supp. 2d at 467 (noting "courts have routinely waived the restriction in the case of qualified institutional investors") (collecting cases); *Nakamura v. BRF S.A.*, 2018 WL 3217412, at *5 (S.D.N.Y. July 2, 2018) ("Even if [movant] fell within the professional plaintiff restriction, the Court would be inclined to grant its motion, given both its status as an institutional

6

investor and the presumptively most adequate plaintiff."); *see also* Conference Report, at *35 (the PSLRA "grants courts discretion to avoid the ***unintended consequences of disqualifying institutional investors*** from serving more than five times in three years").

Trapp claims that Boston violates the 5-in-3 provision because it is "presently serving, seeking to serve, or sought to serve as lead plaintiff and/or class representative in 11 securities class actions." ECF No. 27 at 4. Trapp overstates Boston's caseload and misapplies the PSLRA. To the extent the 5-in-3 provision even applies to a prospective lead plaintiff, it is expressly limited to securities class actions ***filed*** during the prior three-year period. *See Cohen v. Luckin Coffee Inc.*, 2020 WL 3127808, at *8 (S.D.N.Y. June 12, 2020) (rejecting interpretation that 5-in-3 provision was meant to include "cases that were ***pending*** in the past three-year time period," noting "[t]he only reasonable reading of the word 'brought' is as a synonym for 'filed'") (emphasis in original). Boston was appointed as a lead plaintiff in seven cases filed in the prior three years. Of those cases, two have reached settlements and two were dismissed, leaving just three cases that are being actively litigated by Boston. In two of those cases, Boston serves alongside other institutional investors as co-lead plaintiffs.

Trapp also incorrectly suggests that Boston has the burden to prove that some special circumstance warrants waiver of the 5-in-3 provision. *See* ECF No. 27 at 6. This is not the law. The PSLRA is clear that the burden lies with Trapp to rebut the presumption that Boston is entitled to appointment. *See Musk*, 342 F.R.D. at 83 ("The burden to rebut the presumption that [a public pension fund with the largest financial interest] should be appointed lead plaintiff rests with [the competing movant]."); *see also In re Diamond Foods, Inc., Sec. Litig.*, 281 F.R.D. 405, 410 (N.D. Cal. 2012) ("[T]he argument over whether the professional plaintiff bar applies to institutional investors has been dealt with as part of the burden of the party trying to rebut the presumption that

7

the institutional investor with the largest financial interest and who satisfies the [Rule 23 requirements] is the most adequate plaintiff.") (collecting cases).  And regardless of the burden, "[n]owhere does the PSLRA require that a showing of 'special circumstances' is needed in order to justify lifting the bar."  *Diamond Foods*, 281 F.R.D. at 411.

Trapp speculates that Boston lacks the resources to serve as Lead Plaintiff in this case, because Boston is "spread too thin" by its caseload.  ECF No. 27 at 2, 5.  This speculation falls woefully short of the "proof" required to rebut the presumption, and is belied by Boston's track record of serving as a lead plaintiff and recovering hundreds of millions of dollars for investors. *See Musk*, 342 F.R.D. at 83 (contention that presumptive lead plaintiff was "spread too thin" relied on "impermissible speculation").

Contrary to Trapp's unsupported contentions, through Boston's extensive experience serving as a lead plaintiff in previous securities class actions, it has developed effective methods and practices to ensure that each case in which Boston serves as a lead plaintiff is prosecuted vigorously and in the best interests of the class.  *See* Smyth Decl. ¶ 7.  Indeed, Boston has achieved several significant recoveries on behalf of investors while it was actively involved as a lead plaintiff in other securities class actions. *See id*. ¶ 6.  Moreover, Boston's Executive Officer, along with Boston's General Counsel, actively oversee the prosecution of each securities class action in which Boston has an active role. *See id*. ¶ 5.  Thus, Boston has clearly demonstrated that it has the resources and ability to effectively prosecute this case along with the others in which it currently serves as a lead plaintiff.[6]

---

[6] For these reasons, the other out-of-Circuit cases cited by Trapp are inapposite. *See Chiaretti v. Orthodontic Ctrs. of Am., Inc.*, 2003 WL 27391614, at *2 (E.D. La. Aug. 28, 2003) (pension fund's general counsel acting as sole fiduciary in six large securities class actions and also served as general counsel for two large pension funds); *In re Telxon Corp. Sec. Litig.*, 67 F. Supp. 2d 803, 822 (N.D. Ohio 1999) (applying 5-in-3 provision to institutional investor that lacked the largest financial interest and did not satisfactorily demonstrate that the provision should be waived); *In re Unumprovident Corp. Sec. Litig.*, 2003 U.S. Dist. LEXIS 24633, at*20 (E.D. Tenn. Nov. 6, 2003) (declining to waive application of 5-in-3 provision to institutions that participated as lead plaintiff in thirteen of the twenty-four cases

Courts have routinely appointed institutions with heavier caseloads than Boston. *See, e.g.*, *Iron Workers*, 616 F. Supp. 2d at 466 (appointing public pension fund as lead plaintiff despite its involvement in 15 securities class actions); *Extreme Networks*, 2016 WL 3519283, at *8 (institution's leadership of "twelve securities class actions within the last three years is not out of bounds from other similar lead plaintiff decisions"). If anything, the "accumulated experience of [Boston, as an institutional investor,] in pursuing multiple securities fraud actions seems a benefit more than a detriment." *Iron Workers*, 616 F. Supp. 2d at 467.

Trapp also baselessly suggests that the public minutes of Boston's Board meetings demonstrate that Boston cannot adequately oversee this case. *See* ECF No. 27 at 5-6. Trapp's implication is wrong and is directly refuted by the sworn declaration of Boston's Executive Officer. The securities cases in which Boston serves as a lead plaintiff are frequently discussed during Board meetings, but those discussions take place during executive sessions and are therefore not recorded in the meeting minutes. *See* Smyth Decl. ¶ 8. Unlike the Board's discussions during general administrative sessions, which are reflected in the publicly available minutes of those meetings, discussions during executive sessions include privileged or confidential communications that are not made available to the public. *See id*. Moreover, Boston's Board members regularly receive updates from Boston's staff regarding material developments in Boston's securities matters, and court documents and correspondence with Boston's outside counsel are stored in a shared electronic folder that is accessible by Boston's Board. *See id*.

---

where they sought appointment because institutions did not "persuade the court [that] failure to grant an exception . . . would be *inconsistent* with the purposes of the PSLRA") (emphasis in original); *Stengle v. Am. Ital. Pasta Co.*, 2005 WL 8159083, at *5 (W.D. Mo. Dec. 19, 2005) (declining to waive application of 5-in-3 provision to institution because there were several other institutional investors seeking lead plaintiff); *Thompson v. The Shaw Grp. Inc.*, 2004 WL 2988503, at *7 (E.D. La. Dec. 14, 2004) (declining to waive application of 5-in-3 provision to institution to avoid "the risk of overstretch" because institution's general counsel would be acting as sole fiduciary in eight concurrent lawsuits and there were other institutions seeking appointment that had a similar loss).

9

Trapp's claim that the appointment of Boston as Lead Plaintiff would put this case "at risk and subject it to unnecessary danger" also relies on speculation and does not approach the level of proof needed to rebut Boston's status as the presumptive Lead Plaintiff.  ECF No. 27 at 2.  In support of his contention, Trapp points to Boston's service as a lead plaintiff in *In re Allergan PLC Securities Litigation*, 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020), where a different court denied class certification based on facts and circumstances limited to that litigation.  *See id*. at \*6-9.  This same argument, however, has been repeatedly rejected by courts appointing Boston as a lead plaintiff and class representative, including a court in this Circuit just six months ago, which Trapp fails to bring to the Court's attention.  *See Lemm v. New York Cmty. Bancorp, Inc.*, 2024 WL 2022213, at \*7 (E.D.N.Y. May 7, 2024) (competing movant "fails to raise any proof that Boston Retirement is an inadequate lead plaintiff in *this* litigation") (emphasis in original); *Shapiro v. TG Therapeutics, Inc.*, 2022 WL 16555585, at \*5 n.2 (S.D.N.Y. Oct. 31, 2022) (rejecting argument, noting that Boston selected a single firm different from those in *Allergan*); *Boston Ret. Sys. v. Uber Techs., Inc.*, 2022 WL 2954937, at \*4 (N.D. Cal. July 26, 2022) (appointing Boston as class representative after finding Boston "more than surpass[ed] [the adequacy] standard").  Like those courts, this Court should reject Trapp's contention here.  Indeed, contrary to Trapp's speculative assertions, the fact that Boston has been appointed as a lead plaintiff in multiple securities class actions after *Allergan* "seems only to highlight how often courts have found it to be a proper plaintiff." *In re Wash. Mut., Inc. Sec., Derivative & ERISA Litig.*, 2010 WL 4272567, at \*10 (W.D. Wash. Oct. 12, 2010).

## **CONCLUSION**

For the reasons discussed above and in its prior briefs, Boston respectfully requests that the Court grant its motion.

Dated:   November 5, 2024

Respectfully submitted,

*/s/ Hannah Ross*
Hannah Ross
Avi Josefson
Scott R. Foglietta
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
hannah@blbglaw.com
avi@blbglaw.com
scott.foglietta@blbglaw.com

*Counsel for Proposed Lead Plaintiff Boston
Retirement System, and Proposed Lead Counsel
for the Class*

11