**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------------X
STEVEN LONG, Individually and
on Behalf of All Others Similarly
Situated,

                    Plaintiff,            **24 Civ. 6196 (JHR) (GS)**

        -against-                       **ORDER**

STELLANTIS N.V., CARLOS
TAVARES, and NATALIE M.
KNIGHT,

                    Defendants.
-------------------------------------------------------------------X
**GARY STEIN, United States Magistrate Judge:**

Before the Court are competing motions for appointment as lead plaintiff in

this putative securities class action.  For the reasons set forth below, the Court finds

that Boston Retirement System is the movant that is most capable of adequately

representing the interests of class members, pursuant to the Private Securities

Litigation Reform Act ("PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B)(i).  Accordingly, the

Court appoints Boston Retirement System as lead plaintiff and its counsel,

Bernstein Litowitz Berger & Grossman LLP, as lead counsel.

## BACKGROUND

### A.  The Complaint

This action is brought on behalf of investors in Defendant Stellantis N.V.

("Stellantis"), a multinational automaker whose common stock is traded on the New

York Stock Exchange.  (Dkt. No. 1 ("Complaint" or "Compl.") ¶¶ 1, 12).  Based in

The Netherlands, Stellantis designs, manufactures, and distributes vehicles under

several well-known brand names, including Maserati, Alfa Romeo, Jeep, Dodge, Ram, Chrysler, Citroen, Fiat, Peugeot, and others.  (*Id.* ¶ 12, 18).

On July 25, 2024, Stellantis announced its financial results for the first half of 2024.  (*Id.* ¶ 40).  According to the Complaint, these results were disappointing and below expectations.  (*Id.* ¶¶ 4, 40-41).  Stellantis reported net revenues of €85.0 billion, down by 14% compared to the first half of 2023, and net profits of €5.6 billion, down by 48%.  (*Id.* ¶ 40).  Following the announcement, Stellantis' stock price slid from $19.60 at the close of trading on July 24, 2024 to $17.66 on July 26, 2024, a drop of approximately 10%.  (*Id.* ¶¶ 5, 45).

The Complaint alleges that earlier in 2024, Stellantis and Defendants Carlos Tavares, its Chief Executive Officer, and Natalie M. Knight, its Chief Financial Officer, made false and misleading statements to the market, causing the company's stock price to be artificially inflated.  (*Id.* ¶¶ 2-3, 13-14).  More specifically, in a press release and an earnings call on February 15, 2024, Defendants made positive statements about Stellantis' reduction of inventory levels, pricing improvements, and expansion of its product offerings, which misled investors about the company's 2024 outlook.  (*Id.* ¶¶ 2-3, 20-25).  These statements were revealed to be false when the company announced its disappointing results on July 25, 2024 and admitted, among other things, that it needed to take decisive action to address operational challenges, including market share and inventory performance.  (*Id.* ¶¶ 4, 40-44).

The Complaint was filed three weeks later, on August 15, 2024, on behalf of a class of investors who purchased Stellantis stock between February 15, 2024 and

July 24, 2024 (the "Class Period").  (*Id.* ¶ 1).  The Complaint asserts a claim for

securities fraud against all Defendants under Section 10(b) of the Securities

Exchange Act of 1934 and Rule 10b-5 promulgated thereunder (*id.* ¶¶ 65-74), and a

claim for control person liability against Defendants Tavares and Knight under

Section 20(a) of the Exchange Act (*id.* ¶¶ 75-80).

### B.  The Motions for Appointment as Lead Plaintiff

On October 15, 2024, motions for appointment as lead plaintiff were filed by

five different individuals and entities who purchased Stellantis common stock

during the Class Period: (1) Thomas Trapp (Dkt. No. 6); (2) Mark Lim (Dkt. No. 9);

(3) City of North Miami Beach General Employees' Retirement Plan and

Retirement Plan for Police Officers & Firefighters of the City of North Miami Beach

(Dkt. No. 12); (4) Boston Retirement System (Dkt. No. 17); and (5) Gregory Rikard

(Dkt. No. 19).

On October 29, 2024, the City of North Beach retirement plans withdrew

their motion (Dkt. No. 26), and Gregory Rikard filed a statement of non-opposition

to the competing motions (Dkt. No. 25).  Mark Lim did not file an opposition, which

had the effect of removing his motion from contention.  *See Omdahl v. Farfetch Ltd.*,

No. 19 Civ. 8657 (AJN), 2020 WL 3072291, at *2 (S.D.N.Y. June 10, 2020) (deeming

motion for appointment as lead counsel "abandoned" where movant failed to file

opposition to competing motions); *In re KIT Digital, Inc. Sec. Litig.*, 293 F.R.D. 441,

443 (S.D.N.Y. 2013) (lead plaintiff movants "did not file opposition briefs, and thus

the Court deems their applications abandoned or withdrawn").

As a result, only the motions by Thomas Trapp ("Trapp") and Boston Retirement System ("BRS") remain pending before the Court.  Both Trapp and BRS filed opposition briefs on October 29, 2024 (Dkt. Nos. 27, 29) and reply briefs in support of their respective motions on November 5, 2024 (Dkt. Nos. 31, 33).  In addition to his briefs, Trapp filed two declarations from his counsel, Adam M. Apton, in support of his motion (Dkt. Nos. 8 ("First Apton Decl."), 28 ("Second Apton Decl.")).  BRS filed a declaration from its counsel, Hannah Ross, along with its original motion (Dkt. No. 21 ("Ross Decl.")), and a declaration from its Executive Officer, Timothy J. Smyth, along with its reply brief (Dkt. No. 32 ("Smyth Decl.")).

Trapp is a resident of Rock Spring, Wyoming and a business owner who has been investing in the stock market for 25 years and considers himself a sophisticated investor.  (Dkt. No. 7 at 8).  He is represented by Levi & Korsinsky, LLP ("Levi & Korsinsky"), the law firm that filed the Complaint.[1]  (*Id*. at 8-9; Compl. at 24).

BRS is a public pension fund that provides retirement benefits to employees of the City of Boston, Massachusetts and its autonomous agencies.  (Smyth Decl. ¶ 3).  It manages approximately $7.4 billion in assets on behalf of its members and beneficiaries.  (*Id*.).  BRS's counsel in this case is Bernstein Litowitz Berger & Grossman LLP ("Bernstein Litowitz").  (Dkt. No. 18 at 9-10).

---

[1] Steven Long, the Plaintiff named in the Complaint, has not filed a motion for appointment as lead plaintiff.

**LEGAL STANDARD**

The PSLRA provides that, within 20 days of filing a putative class action, "the plaintiff must publish 'in a widely circulated national business-oriented publication or wire service,' a notice to the class, informing the members of the class of the pendency of the action, and their right to file a motion for appointment as lead plaintiff." *Rasella v. Musk*, 342 F.R.D. 74, 79 (S.D.N.Y. 2022) (quoting 15 U.S.C. § 78u-4(a)(3)(A)(i)) (additional citation omitted). Within 60 days of publication of the notice, "any member of the purported class may move the court to serve as lead plaintiff of the purported class." 15 U.S.C. § 78u-4(a)(3)(A)(i); *see Rasella*, 342 F.R.D. at 79.

The PSLRA directs the court to "appoint as lead plaintiff the member or members of the purported plaintiff class that the court determines to be most capable of adequately representing the interests of class members," referred to in the statute as the "most adequate plaintiff." 15 U.S.C. § 78u-4(a)(3)(B)(i). "The PSLRA creates a rebuttable presumption that the lead plaintiff should be the plaintiff who (a) has either filed a complaint or [timely] moved for lead plaintiff status; (b) has the largest financial interest in the relief sought; and (c) otherwise satisfies the typicality and adequacy requirements of Federal Rule of Civil Procedure 23." *Goldenberg v. NeoGenomics, Inc.*, No. 22 Civ. 10314 (JHR), 2023 WL 6389101, at *2 (S.D.N.Y. Oct. 2, 2023) (citation omitted); *see* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). "[B]y enacting the PSLRA, Congress sought to encourage class

members with the largest purported losses to act as lead plaintiffs in private securities litigation." *Barnet v. Elan Corp.*, 236 F.R.D. 158, 161 (S.D.N.Y. 2005).

"Once the 'most adequate plaintiff' is determined, that plaintiff is deemed the presumptive lead plaintiff, and will be appointed lead plaintiff unless another class member offers exacting proof 'that the presumptively most adequate plaintiff' (1) 'will not fairly and adequately protect the interest of the class'; or (2) 'is subject to unique defenses that render such plaintiff incapable of adequately representing the class.'" *Rasella*, 342 F.R.D. at 81 (quoting 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)) (additional citation omitted).

## DISCUSSION

### A. Presumptive Lead Plaintiff

Applying the three criteria set forth in 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), the Court finds that BRS is the presumptive lead plaintiff for this action.

#### 1. Timeliness

Both BRS and Trapp have satisfied the first, procedural requirement of the PSLRA's rebuttable presumption provision. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(aa). Levi & Korsinsky, as counsel for named Plaintiff Steven Long, published notice of this suit on *Globe Newswire* on August 15, 2024, the same day it filed the Complaint. (First Apton Decl. Ex. C). The notice stated, *inter alia*, that applications for appointment as lead plaintiff needed to be filed by October 15, 2024, the 60-day deadline.[2] (*Id.*). BRS and Trapp both filed their lead plaintiff motions

---

[2] Although 60 days after August 15 is October 14, October 14, 2024 was Columbus Day.

on October 15, 2024.  (Dkt. Nos. 6, 17).  Thus, there is no dispute that the motions

were timely filed.

### 2.  Financial Interest

There is also no dispute as to which of these two investors has the largest

financial interest in this case.  *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(bb).  In

determining who has the largest financial interest among potential lead plaintiffs,

courts in this Circuit have looked to the following factors: (1) the total number of

shares purchased during the class period; (2) the net shares purchased during the

class period; (3) the net funds expended during the class period; and (4) the

approximate losses suffered.  *See, e.g.*, *Goldenberg*, 2023 WL 6389101, at *3;

*Gronich v. Omega Healthcare Invs., Inc.*, No. 17 Civ. 8983 (NRB), 2018 WL 1626078,

at *2 (S.D.N.Y. Mar. 27, 2018).  Courts "place the greatest emphasis on the

approximate loss suffered by the movant."  *Gronich*, 2018 WL 1626078, at *2.

By all of these metrics—including, most importantly, approximate loss—BRS

has by far the largest financial interest.  BRS purchased 171,662 total and net

shares of Stellantis during the Class Period (in April and May 2024), expending

$4,102,088.  (Ross Decl. Exs. A & B).  By contrast, Trapp purchased a total of 14,401

shares (from April to June 2024) at a cost of $364,422.  (First Apton Decl. Exs. A &

B).  Trapp suffered a loss of $141,995 as of the end of the Class Period (*id.* Ex. B),

whereas BRS's loss was $1,427,495—ten times more.  (Ross Decl. Ex. B; Dkt. No. 29

at 4).  Thus, BRS indisputably has the largest financial interest.

### 3. Rule 23 Requirements

Lastly, both BRS and Trapp satisfy the Rule 23 requirements. *See* 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Although this provision refers to the requirements of Rule 23 generally, "'[i]n practice, a potential lead plaintiff need only make a "preliminary showing" that it satisfies the "typicality" and "adequacy" requirements of Rule 23 in order to satisfy the PSLRA.'" *Rasella*, 342 F.R.D. at 80 (quoting *Peters v. Jinkosolar Holding Co.*, No. 11 Civ. 7133 (JPO), 2012 WL 946875, at *11 (S.D.N.Y. Mar. 19, 2012)); *see Goldenberg*, 2023 WL 6389101, at *3 (noting that because typicality and adequacy, unlike numerosity and commonality, are the only two Rule 23 requirements that "directly address the personal characteristics of the class representative," they are the only ones "relevant to the determination of lead plaintiff under the PSLRA") (citations omitted).

"'The typicality threshold is satisfied where the presumptive lead plaintiff's claims arise from the same conduct from which the other class members' claims and injuries arise.'" *Goldenberg*, 2023 WL 6389101, at *4 (quoting *Simco v. Aegean Marine Petroleum Network Inc.*, No. 18 Civ. 4993 (NRB), 2018 WL 11226076, at *3 (S.D.N.Y. Oct. 30, 2018)). Both BRS and Trapp allege they (1) purchased Stellantis stock during the Class Period (2) at prices artificially inflated by Defendants' allegedly material misstatements and omissions and (3) suffered damages as a result. (Dkt. No. 7 at 7; Dkt. No. 18 at 7). These are "hallmarks of typicality under Rule 23(a)" and suffice to meet the typicality requirement. *Goldenberg*, 2023 WL 6389101, at *4 (finding typicality satisfied where "[plaintiff] alleges that he

purchased [the issuer's] securities during the class period; that the purchased

shares were artificially inflated by Defendants' materially false and misleading

statements; and that he suffered damages as a result") (citing additional cases to

this effect).

The adequacy requirement "is satisfied where '(1) class counsel is qualified,

experienced, and generally able to conduct the litigation, (2) there is no conflict

between the proposed lead plaintiff and the members of the class, and (3) the

proposed lead plaintiff has a sufficient interest in the outcome of the case to ensure

vigorous advocacy.'" *Id.* (quoting *Teran v. Subaye, Inc.*, No. 11 Civ. 2614 (NRB),

2011 WL 4357362, at \*5 (S.D.N.Y. Sept. 16, 2011)).  Both Bernstein Litowitz and

Levy & Korsinsky have extensive experience, and have had considerable success, in

prosecuting federal securities actions.  (First Apton Decl. Ex. D; Ross Decl. Ex. D).

No conflict on the part of either BRS or Trapp and the other class members, or

evidence that either movant has "interests that are antagonistic to the class they

seek to represent," *Rasella*, 342 F.R.D. at 80 (cleaned up), has been identified.  And

each potential lead plaintiff has a sufficiently substantial interest in the outcome of

the case to ensure it is vigorously prosecuted.  Accordingly, the adequacy

requirement is also satisfied.  *See Goldenberg*, 2023 WL 6389101, at \*4.

Because BRS has the largest financial interest in the case, and because BRS

meets the other requirements of 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), BRS is the

presumptive lead class plaintiff under the PSLRA.

### B. Trapp's Attempts to Rebut the Presumption

#### 1. Professional Plaintiff Bar

Trapp's primary argument is that BRS is "disqualified" from serving as lead

plaintiff by virtue of 15 U.S.C. § 78u-4(a)(3)(B)(vi).  (Dkt. No. 27 at 7; Dkt. No. 33 at

4-5).  This provision of the PSLRA, known as the "professional plaintiff bar," *see*

*Rasella*, 342 F.R.D. at 81, provides:

> Except as the court may otherwise permit, consistent with the purposes
> of this section, a person may be a lead plaintiff, or an officer, director, or
> fiduciary of a lead plaintiff, in no more than 5 securities class actions
> brought as plaintiff class actions pursuant to the Federal Rules of Civil
> Procedure during any 3-year period.

15 U.S.C. § 78u-4(a)(3)(B)(vi).

Trapp asserts that BRS is presently serving as a lead plaintiff in eight

federal securities class actions and has sought appointment in another action in

addition to this one.  (Dkt. No. 27 at 4-5).  This means, according to Trapp, that BRS

is "in violation of the PSLRA's bar against 'professional plaintiffs'" and thus is

"ineligible" to serve as lead plaintiff in this case.  (*Id*. at 1, 3; *see* Dkt. No. 33 at 1).

Trapp cites several cases applying the professional plaintiff bar to institutional

investors such as BRS—notably, all cases from outside the Second Circuit.  (*See*

Dkt. No. 27 at 4-6 & n.2; Dkt. No. 33 at 2-4).

Courts in this District, however, have consistently rejected the 5-in-3 rule

argument advanced by Trapp, holding that Section 78u-4(a)(3)(B)(vi) does *not* bar

appointment of an institutional investor as lead plaintiff simply because the

investor has served as lead plaintiff in more than five cases over the past three

years.  *See, e.g.*, *Rasella*, 342 F.R.D. at 82 ("[C]ourts have repeatedly excepted institutional investors from § 78u-4(a)(3)(B)(vi) in order to reflect the statute's purposes[.]"); *Ragan v. AppHarvest, Inc.*, No. 21 Civ. 7985 (LJL), 2021 WL 5909116, at *8 n.6 (S.D.N.Y. Dec. 13, 2021) (rejecting argument that institutional investor "should be barred from serv[ing] as lead plaintiff pursuant to the PSLRA's 5-in-3 rule"); *Nakamura v. BRF S.A.*, No. 18 Civ. 2213 (PKC), 2018 WL 3217412, at *5 (S.D.N.Y. July 2, 2018) ("[T]he provision of the PSLRA restricting the use of professional plaintiffs was largely directed at private individuals[.]") (citation omitted); *Hachem v. Gen. Elec. Co.*, No. 17 Civ. 8457 (JMF), 2018 WL 502682, at *2 (S.D.N.Y. Jan. 19, 2018) ("the 'professional plaintiff' prohibition does not apply—or, at a minimum, does not apply as strongly—'in the case of qualified institutional investors'") (citation omitted), *vacated on other grounds*, 2018 WL 1779345 (S.D.N.Y. Apr. 11, 2018); *Iron Workers Local No. 25 Pension Fund v. Credit-Based Asset Servicing & Securitization, LLC*, 616 F. Supp. 2d 461, 467 (S.D.N.Y. 2009) ("courts have routinely waived the restriction in the case of qualified institutional investors"); *Kuriakose v. Fed. Home Loan Mortg. Co.*, No. 08 Civ. 7281 (JFK), 2008 WL 4974839, at *8 (S.D.N.Y. Nov. 24, 2008) ("as an institutional investor, Central States is not subject to the PSLRA's strict ban on 'professional plaintiffs' who have served as lead plaintiff in more than five class actions in the previous three-year period"); *In re Pfizer Inc. Sec. Litig.*, 233 F.R.D. 334, 338 n.4 (S.D.N.Y. 2005) (noting that § 78u-4(a)(3)(B)(vi) "was not intended to target institutional investors").

As these courts reason, Section 78u-4(a)(3)(B)(vi) itself authorizes exceptions from the 5-in-3 rule "as the court may . . . permit" where "consistent with the purposes of this section." 15 U.S.C. § 78u-4(a)(3)(B)(vi). A key purpose of the PSLRA was to "encourage institutional investors to take a more active role in securities class action lawsuits," which Congress believed would "benefit shareholders and assist courts by improving the quality of representation in securities class actions." H.R. REP. NO. 104-369, at 32, 34 (1995) (Conf. Rep.), *reprinted in* 1995 U.S.C.C.A.N. 730, 733. The legislative history to the 5-in-3 rule states that "[i]nstitutional investors . . . may need to exceed this limitation and do not represent the type of professional plaintiff this legislation seeks to restrict." *Id.* at 35; *see Ragan*, 2021 WL 5909116, at *8 n.6 ("As the legislative history reflects, institutional investors did not represent the type of professional plaintiff the 5-in-3 rule sought to restrict."). Thus, to disqualify an institutional investor because it exceeded the 5-in-3 cap "'would contravene the very purpose for which the professional plaintiff bar was enacted'"— and, ergo, the statutory text, which expressly incorporates that purpose. *Rasella*, 342 F.R.D. at 82 & n.3 (quoting *In re Extreme Networks Inc. Sec. Litig.*, No. 15-cv-4883-BLF, 2018 WL 3519283, at *7 (N.D. Cal. June 28, 2016)).

Because it swims against the strong tide of case law in this District, as well as the majority view nationwide, *see Ollila v. Babcock & Wilcox Enterps., Inc.*, 253 F. Supp. 3d 827, 831 (W.D.N.C. 2017); *see also Rasella*, 342 F.R.D. at 82 (collecting

cases from other jurisdictions), the Court rejects Trapp's argument that BRS is ineligible to serve as lead plaintiff by virtue of the professional plaintiff bar.

### 2. BRS's Alleged Failures to Properly Oversee Class Actions

Trapp also makes fact-based objections to BRS's appointment, citing evidence he claims shows "a blatant lack of supervision for the many cases [BRS] is currently serving" as lead plaintiff and casts doubt on BRS's ability to "effectively represent the class" in this action. (Dkt. No. 33 at 1-2). These objections are also unavailing.

First, Trapp points to publicly available minutes of BRS's 2024 board meetings, in which its general counsel (in Trapp's characterization) "consistently states that there are 'no legal issues to discuss' or 'no legal update.'" (Dkt. No. 27 at 5 (quoting Second Apton Decl. Ex. A)). According to Trapp, the absence of discussion at these board meetings of the numerous cases in which BRS acts as lead plaintiff demonstrates that BRS "is spread too thin to provide the adequate attention they deserve." (*Id.*).

In his declaration submitted along with BRS's reply papers, BRS's CEO, Timothy Smyth, addresses this issue. Smyth explains that the securities cases in which BRS serves as lead plaintiff "*are* routinely discussed during [BRS's] Board meetings"—just not during the administrative sessions for which minutes are publicly available. (Smyth Decl. ¶ 8 (emphasis added)). These discussions instead "take place during private executive sessions," in the form of "privileged or confidential communications that are not made available to the public." (*Id.*). Smyth further affirms that BRS board members are given updates regarding

material developments in securities litigation by BRS staff and other updates from

BRS's outside counsel.  (*Id.*).  The Court has no reason to disbelieve Smyth's sworn

statements and finds the public meeting minutes cited by Trapp to fall far short of

the "exacting proof," *Rasella*, 342 F.R.D. at 81, needed to rebut the presumption

that BRS is the most adequate plaintiff.

Second, Trapp points to *In re Allergan PLC Securities Litigation*, No. 18 Civ.

12089 (CM), 2020 WL 5796763 (S.D.N.Y. Sept. 29, 2020), as evidence that BRS is

unable to properly oversee counsel.  (Dkt. No. 27 at 2, 6-7).  In *Allergan*, the

Honorable Colleen McMahon denied BRS's motion for class certification on the

ground that "BRS is an inadequate representative of the class."  *Allergan*, 2020 WL

5796763, at *1.  The court had previously appointed BRS as lead plaintiff, but

rejected BRS's proposal that two law firms serve as co-lead counsel; instead, it

required BRS to choose one of the two firms as lead counsel, and BRS said it had

done so.  *See id.* *3-4.  During the briefing on BRS's motion for class certification, it

emerged that the second law firm had not only remained involved in the litigation,

but "effectively played the role of co-lead counsel."  *Id.* at *6.  By devising a secret

workaround of the court's ruling, Judge McMahon found, BRS and the two law

firms (neither of which was Bernstein Litowitz) "placed the interests of counsel

ahead of those of the class."  *Id.* at *7.  She continued:  "Either BRS did not really

acquiesce in my directive, or it is incapable of controlling its lawyers when they

prove unwilling to abide by rulings of the court concerning who could serve as lead

counsel." *Id.* at \*9.  Either scenario "render[ed] BRS an inadequate class representative." *Id.*

While the conduct described in *Allergan* is troubling, at least three courts have found it not to be an obstacle to appointment of BRS as lead plaintiff or class representative in other securities class actions.  *See Lemm v. N.Y. Community Bancorp, Inc.*, No. 24 Civ. 903 (NRM) (JRC), 2024 WL 2022213, at \*7 (E.D.N.Y. May 7, 2024) (rejecting competing movant's objection to BRS based on *Allergan* as movant "fails to raise any proof that [BRS] is an inadequate lead plaintiff in *this* litigation") (emphasis in original); *Shapiro v. TG Therapeutics, Inc.*, No. 22 Civ. 6106 (JSR), 2022 WL 16555585, at \*5 n.2 (S.D.N.Y. Oct. 31, 2022) (noting that BRS was not seeking to appoint as lead counsel either of the law firms involved in *Allergan*); *Boston Ret. Sys. v. Uber Techs., Inc.*, No. 19-cv-06361-RS, 2022 WL 2954937, at \*4 (N.D. Cal. July 26, 2022) (rejecting defendants' argument that BRS was an inadequate class representative because it "has shown an inability (or unwillingness) to control its lawyers or legal costs").[3]

Following the decision in *Allergan*, BRS has been appointed lead plaintiff in at least eight federal securities class actions.  (*See* Dkt. No. 27 at 4).  These include *Shapiro* and another case in this District, *In re Barclays PLC Sec. Litig.*, No. 22 Civ. 6106 (KPF), Dkt. No. 39 (Dec. 21, 2022), as well as three cases in the Eastern District of New York, including an appointment made last month.  *Baxter v. PDD*

---

[3] Although not evident from the court's opinion, the defendants in *Uber* relied on the *Allergan* decision in arguing that BRS would be an inadequate class representative.  (Defendants' Opposition to Lead Plaintiff's Revised Motion for Class Certification, No. 19-cv-6361-RS, Dkt. No. 188, at 34 (N.D. Cal. Dec. 28, 2021)).

*Holdings, Inc.*, No. 24 Civ. 5653, Dkt. No. 26 (Nov. 19, 2024).  Trapp does not

adduce evidence of any complaints about BRS's conduct as lead plaintiff in any of

these post-*Allergan* cases, or in any pre-*Allergan* case.  Moreover, due to

settlements and dismissals following BRS's appointment, BRS currently is actively

litigating only four cases as lead plaintiff, and in two of those it serves as co-lead

plaintiff alongside other institutional investors.  (Dkt. No. 31 at 7).  BRS's caseload

is therefore not as heavy as Trapp suggests.

BRS states that it "has achieved significant recoveries on behalf of investors

when serving as a lead plaintiff in securities class actions under the [PSLRA],"

citing seven cases over the past 15 years involving recoveries ranging from $38

million to $200 million.  (Smyth Decl. ¶ 6). *See also Shapiro*, 2022 WL 16555585, at

\*5 (noting that "BRS has served as the lead plaintiff in several significant securities

class actions, which jointly have recovered more than $500 million for injured

investors").  Smyth affirms that BRS "has developed effective methods and practices

to oversee the work of counsel, and to ensure that each case in which [BRS] serves

as lead plaintiff is prosecuted vigorously, efficiently, and in a cost-effective manner."

(Smyth Decl. ¶ 7).  He further affirms BRS's "commitment to maximize the

potential recovery for the class" and "actively monitor counsel" in fulfilling its role

as lead plaintiff.  (*Id.* ¶ 11).

Weighing all the circumstances, the Court does not believe that BRS's

conduct in the *Allergan* case is a persuasive reason to deny it lead plaintiff status in

this case.  Trapp has failed to rebut the statutory presumption that BRS—which

has by far the largest financial interest of the competing movants—is the "most adequate plaintiff" to serve as lead plaintiff in this litigation.

### C.  Appointment of Lead Counsel

The PSLRA provides that "[t]he most adequate plaintiff shall, subject to the approval of the court, select and retain counsel to represent the class."  15 U.S.C. § 78u-4(a)(3)(B)(v).  "'There is a strong presumption in favor of approving a properly-selected lead plaintiff's decision as to counsel.'"  *Goldenberg*, 2023 WL 6389101, at \*6 (quoting *Topping v. Deloitte Touche Tohmatsu CPA*, 95 F. Supp. 3d 607, 623 (S.D.N.Y. 2015)).

Here, BRS has selected Bernstein Litowitz as its counsel.  As reflected in its firm resume provided on this motion, Bernstein Litowitz "has extensive experience serving as lead counsel in securities class actions, including in this District."  (Dkt. No. 18 at 9 (citing Ross Decl. Ex. D (firm resume))).  Moreover, BRS as lead (or co-lead) plaintiff and Bernstein Litowitz as lead (or co-lead) counsel have obtained substantial recoveries working together in other securities class actions.  (Smyth Decl. ¶ 6).  The Court therefore approves BRS's selection of Bernstein Litowitz as lead counsel.  *See Rasella*, 342 F.R.D. at 84 (approving Bernstein Litowitz's selection as lead counsel by institutional investor appointed as lead plaintiff).

## CONCLUSION

For the reasons set forth above, BRS's motion for appointment as lead plaintiff is **GRANTED** and Trapp's motion for appointment as lead plaintiff is **DENIED**.  The lead plaintiff motions filed by Mark Lim, the City of North Miami

Beach retirement plans, and Gregory Rickard are **DENIED AS MOOT**.  BRS is

hereby appointed as lead plaintiff and Bernstein Litowitz is appointed as lead

counsel.  The Clerk is respectfully directed to close the motions pending at Docket

Numbers 6, 9, 12, 17, and 19.

      **SO ORDERED.**

DATED:   December 30, 2024
          New York, New York

_____
The Honorable Gary Stein
United States Magistrate Judge