**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN LONG, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

STELLANTIS N.V., CARLOS TAVARES,
and NATALIE M. KNIGHT,

Defendants.

Case No. 1:24-cv-06196-JHR-GS

ORAL ARGUMENT REQUESTED

**LEAD PLAINTIFF'S MEMORANDUM OF LAW**
**IN SUPPORT OF THEIR MOTION TO STRIKE**
**EXHIBITS TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ................................................................................................ 1

II.  LEGAL STANDARDS ...................................................................................... 2

III. ARGUMENT ..................................................................................................... 4

    A.   Defendants Introduce Cherrypicked Snippets Of Extrinsic Evidence That Are Not Subject To Judicial Notice Or Incorporation By Reference .................... 8

        1.   The Analyst Reports Outside The Complaint Are Not Subject To Judicial Notice ...................................................................................... 8

        2.   Analyst Reports and Transcripts Briefly Referenced In The Complaint Are Not Subject To Judicial Notice ....................................... 12

        3.   Transcripts And Presentations Outside The Complaint Are Not Subject To Judicial Notice .......................................................................... 15

        4.   Articles And Data Sources Outside The Complaint Are Not Subject To Judicial Notice .......................................................................... 16

    B.   Defendants Improperly Seek Judicial Notice Of 7 Exhibits That Are Referenced Nowhere In Their Briefing .............................................................. 22

IV.  CONCLUSION ................................................................................................. 23

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*In re 2007 Novastar Fin. Sec. Litig.*,
2008 WL 2354367 (W.D. Mo. June 4, 2008),
*aff'd,* 579 F (8th Cir. 2009) .................................................................................................17, 21

*Agostino v. Simpson*,
2008 WL 4906140 (S.D.N.Y. Nov. 17, 2008) ...........................................................................14

*Alexander v. Possible Prods., Inc.*,
336 F. Supp. 3d 187 (S.D.N.Y. 2018) .......................................................................................13

*Ambler v. Williamson Cnty., Texas*,
2021 WL 769667 (W.D. Tex. Feb. 25, 2021) ..............................................................................3

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007) .........................................................................................................16

*Citgo Petroleum Corp. v. Starstone Ins. SE*,
2023 WL 7547441 (S.D.N.Y. Nov. 10, 2023) .............................................................................2

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
957 F. Supp. 2d 277 (S.D.N.Y. 2013) .......................................................................................16

*Effie Film, LLC v. Pomerance*,
909 F. Supp. 2d 273 (S.D.N.Y. 2012) .........................................................................................2

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
439 F. Supp. 2d 692 (S.D. Tex. 2006) .........................................................................................7

*F.D.I.C. v. Adams*,
2013 WL 6044111 (N.D. Ga. Apr. 10, 2013) ..............................................................................6

*Gagnon v. Alkermes PLC*,
368 F. Supp. 3d 750 (S.D.N.Y. 2019) ....................................................................................7, 13

*Ganino v. Citizens Util. Co.*,
228 F.3d 154 (2d Cir. 2000) .........................................................................................................6

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020),
*aff'd,* 847 F. App'x 35 (2d Cir. 2021) .........................................................................................3

*Hills v. BioXcel Therapeutics, Inc.*,
2024 WL 3374145 (D. Conn. July 11, 2024) .............................................................................16

*Horne v. Ameris Bank*,
　2023 WL 2908855 (N.D. Ga. Jan. 11, 2023) ....................................................................5

*Hsu v. Puma Biotechnology, Inc.*,
　213 F. Supp. 3d 1275 (C.D. Cal. 2016) .........................................................................8

*Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp. & Lear Mexican Seating Corp.*,
　2016 WL 7410771 (W.D. Tex. Dec. 21, 2016),
　*aff'd*, 804 F. App'x 290 (5th Cir. 2020)..........................................................................5

*Kasilingam v. Tilray, Inc.*,
　2024 WL 4350118 (S.D.N.Y. Sept. 30, 2024)...........................................................6, 16

*Khoja v. Orexigen Therapeutics, Inc.*,
　899 F.3d 988 (9th Cir. 2018) ...........................................................................3, 4, 7, 16

*Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*,
　2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023)....................................................................9

*Luv N' Care, Ltd. v. Goldberg Cohen, LLP*,
　703 Fed. Appx. 26 (2d Cir. 2017).....................................................................................5

*In re Mattel, Inc. Sec. Litig.*,
　2021 WL 1259405 (C.D. Cal. Jan. 26, 2021) ................................................................9

*Melendez v. City of New York*,
　16 F.4th 992 (2d Cir. 2021) .............................................................................................6

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
　982 F. Supp. 2d 277 (S.D.N.Y. 2013).............................................................................3

*Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*,
　2023 WL 9102400 (S.D.N.Y. Dec. 29, 2023), *report and recommendation
　adopted sub nom.*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024) ...................................3

*Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*,
　367 F. Supp. 3d 16 (S.D.N.Y. 2019)...............................................................................8

*Oneida Indian Nation v. New York*,
　691 F.2d 1070 (2d Cir. 1982)...........................................................................................6

*Outlaw v. City of New York*,
　2024 WL 4825955 (S.D.N.Y. Nov. 19, 2024).................................................................2

*In re Pfizer Inc. Sec. Litig.*,
　584 F. Supp. 2d 621 (S.D.N.Y. 2008), *abrogated by
　Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) .......16

*In re PTC Therapeutics, Inc. Sec. Litig.*,
   2017 WL 3705801 (D.N.J. Aug. 28, 2017) ....................................................................8

*Rose Leaf Cleaning, Inc. v. Sonder Hosp. USA, Inc.*,
   2024 WL 3937600 (S.D.N.Y. Aug. 26, 2024) ...............................................................1

*Roth v. Jennings*,
   489 F.3d 499 (2d Cir. 2007).........................................................................................18

*Rothman v. Gregor*,
   220 F.3d 81 (2d Cir. 2000)...........................................................................................17

*S.E.C. v. Goldstone*,
   952 F. Supp. 2d 1060 (D.N.M. 2013) ............................................................................8

*S.E.C. v. Medallion Fin. Corp.*,
   2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022)............................................................12, 13

*S.E.C. v. Passos*,
   760 F. Supp. 3d 95 (S.D.N.Y. 2024)............................................................................18

*S.E.C. v. Ripple Labs, Inc.*,
   2022 WL 762966 (S.D.N.Y. Mar. 11, 2022) ................................................................3

*Shallenburg v. PNC Bank, N.A.*,
   2020 WL 555447 (M.D. Fla. Feb. 4, 2020) ..................................................................5

*Sira v. Morton*,
   380 F.3d 57 (2d Cir. 2004)...........................................................................................13

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
   547 F.3d 406 (2d Cir. 2008)...........................................................................................2

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007)......................................................................................................3, 6

*In re Tommy Hilfiger, Sec. Litig.*,
   2007 WL 5581705 (S.D.N.Y. July 20, 2007) ...............................................................4, 6

*Torain v. Clear Channel Broad., Inc.*,
   651 F. Supp. 2d 125 (S.D.N.Y. 2009).........................................................................16, 22

**STATUTES AND RULES**

Fed. R. Evid. 201(b)..........................................................................................................2

Fed. R. Evid. 201(c) .........................................................................................................4

Fed. R. Civ. P. 12(b)(6)....................................................................................................1, 5

iv

Fed. R. Civ. P. 12(f) ............................................................................................................................2

v

Lead Plaintiff respectfully moves this Court to strike from consideration the Exhibits to the Declaration of Yevgeniya Lotova (ECF No. 56), including Exhibits 16, 17, 21, 22, 36, 39-44, 48, 51, 52, 55, 57, 60-64, 68-72, 77, 78, 81-85, 87-90, 93, 95, 96, 99-101, 103, 105-115 (the "Improper Exhibits"). Defendants fail to meet their burden to justify the Court's consideration of any of their 115 exhibits, and they rely on the Improper Exhibits inappropriately to raise factual disputes in support of their Motion to Dismiss the Amended Class Action Complaint ("Motion to Dismiss" or "MTD") (ECF No. 57, at 3 n.3). Defendants' exhibits are not subject to the doctrines of judicial notice or incorporation-by-reference, as discussed below.

## I.    INTRODUCTION

In a single footnote to their Motion to Dismiss, Defendants assert that the Court may take judicial notice of 115 documents, including 39 documents that are not referenced in the Complaint, seek to wholesale incorporate by reference another 7 documents only briefly mentioned in the Complaint, and seek notice of 7 documents that are not referenced at all in their Motion to Dismiss. Defendants then impermissibly rely on self-serving snippets from these Improper Exhibits throughout their Motion to construct an alternate chain of events that directly contradicts the documents themselves and the well-pled factual allegations in the Complaint. Defendants do not explain in their footnote or elsewhere the legal basis on which the self-serving "facts" they pluck from these documents can be considered on a Rule 12(b)(6) motion to dismiss—and there is none.

Defendants' misuse of the judicial notice and incorporation-by-reference doctrines to construct an alternative set of "facts" is improper and should be rejected. As this Court has recognized, "[a]t the motion to dismiss stage, the Court confines its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Rose Leaf Cleaning,*

1

*Inc. v. Sonder Hosp. USA, Inc.*, 2024 WL 3937600, at *4 (S.D.N.Y. Aug. 26, 2024) (Rearden, J.).[1]

Defendants' exhibits, and the facts and inferences Defendants seek to draw from the Improper

Exhibits, do not meet this standard. Lead Plaintiff respectfully requests that the Court use its

inherent power to strike the exhibits to the Motion to Dismiss for the reasons set forth below.

## II.    LEGAL STANDARDS

"Whether to grant or deny a motion to strike is vested in the trial court's sound discretion."

*Outlaw v. City of New York*, 2024 WL 4825955, at *3 (S.D.N.Y. Nov. 19, 2024). "Courts have the

inherent power to control their dockets and strike material from the docket… reflecting procedural

impropriety or lack of compliance with court rules or orders." *Id.* "The 'inherent powers'

authorizing a court to strike improper materials derive not from rule or statute but from the control

necessarily vested in courts to manage their own affairs so as to achieve the orderly and expeditious

disposition of cases." *Id. See also id.* (explaining that this inherent power is "separate[]" from the

authority granted to courts to strike material from pleadings under Federal Rule of Civil Procedure

12(f)).

Under Federal Rule of Evidence 201, a court *"may"* take judicial notice of facts that are

not subject to reasonable dispute because they are either (1) generally known within the territorial

jurisdiction, or (2) capable of accurate determination by resort to sources whose accuracy cannot

be reasonably questioned. Fed. R. Evid. 201(b); *Effie Film, LLC v. Pomerance*, 909 F. Supp. 2d

273, 298 (S.D.N.Y. 2012). The Court's notice, however, is limited to the existence of the

documents, and must be made "without regard to the truth of their contents." *Staehr v. Hartford*

*Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008). Critically, the "***party requesting judicial***

***notice bears the burden of persuading the [] judge that the fact is a proper matter of judicial***

---

[1] Unless otherwise noted, all emphasis is added and citations are omitted.

***notice***.'" *Citgo Petroleum Corp. v. Starstone Ins. SE*, 2023 WL 7547441, at *1 (S.D.N.Y. Nov. 10, 2023). "Every reasonable doubt upon the subject should be resolved promptly in the negative." *Ambler v. Williamson Cnty., Texas*, 2021 WL 769667, at *3 (W.D. Tex. Feb. 25, 2021).

Thus, while a court may consider "documents incorporated into the complaint by reference, and matters of which a court *may* take judicial notice," *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), courts do not permit the weighing of evidence at the pleading stage. Records are not entitled to "judicial notice" where defendants cite the documents in an effort "to establish the truth of key factual assertions made in their motion to dismiss." *Nw. Biotherapeutics, Inc. v. Canaccord Genuity LLC*, 2023 WL 9102400, at *8-12 (S.D.N.Y. Dec. 29, 2023), *report and recommendation adopted sub nom.*, 2024 WL 620648 (S.D.N.Y. Feb. 14, 2024).

Asking a court "to weigh that evidence, and to conclude that the evidence contradicts Plaintiff's allegations" is "an invitation to error"—such materials are "outside of the pleadings" and may be considered only on "a motion for summary judgment." *Id.* 2023 WL 9102400, at *10-11. Indeed, "[i]t is improper to assume the truth of an incorporated document if such assumptions only serve to *dispute facts* stated in a well-pleaded complaint." *See, e.g.*, *Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1003 (9th Cir. 2018). Rather, courts must "continue[] to draw all reasonable inferences in the [plaintiff's] favor." *S.E.C. v. Ripple Labs, Inc.*, 2022 WL 762966, at *1 n.1 (S.D.N.Y. Mar. 11, 2022); *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013) ("A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.").

Courts grant motions to strike extrinsic documents submitted with motions to dismiss in securities class actions where, as here, the doctrines of judicial notice or incorporation by reference do not apply. *See Gray v. Wesco Aircraft Holdings, Inc.*, 454 F. Supp. 3d 366, 371 (S.D.N.Y.

3

2020), *aff'd*, 847 F. App'x 35 (2d Cir. 2021) (granting in part motion to strike extrinsic SEC filings in securities class action); *In re Tommy Hilfiger, Sec. Litig.*, 2007 WL 5581705, at \*5 (S.D.N.Y. July 20, 2007) (granting, in securities class action, motion to strike news articles regarding market reaction where only fact susceptible to judicial notice was "fact of [] publication alone," which was "irrelevant").

## III.    ARGUMENT

The Court should exercise its "inherent power" to strike Defendants' 115 exhibits because Defendants have not met their burden to demonstrate that any of these exhibits are subject to the doctrines of judicial notice or incorporation by reference. The fact of their publication alone—which is the only fact that the Court could properly consider—is irrelevant. Defendants' effort to introduce the Improper Exhibits for their truth in order to dispute the well-pled allegations in the Complaint should be rejected. *See* Fed. R. Evid. 201(c).

Defendants' tactic reflects the "concerning pattern in securities cases" of defendants trying to use the judicial notice and incorporation by reference doctrines to "defeat what would otherwise constitute adequately stated claims at the pleading stage." *Khoja,* 899 F.3d at 998. As courts have observed, "the unscrupulous use of extrinsic documents to resolve competing theories against the complaint risks premature dismissals of plausible claims that may turn out to be valid after discovery"—a risk that is "*especially significant in SEC fraud matters*, where there is already a heightened pleading standard…." *Id.*

Here, Defendants have not requested that the Court take judicial notice of their 115 exhibits, stating only that the "background" section of their Motion to Dismiss includes "documents referenced therein," which appears to refer to the Complaint, "or subject to judicial notice." MTD 3 n.3. This footnote fails to meet Defendants' burden to establish that their exhibits are susceptible to judicial notice or incorporation by reference. Indeed, Defendants have not even

4

*attempted* to specify which of their 115 documents are subject to which doctrines, leaving the onerous task to Plaintiff and the Court of *guessing* which doctrines Defendants may seek to apply.

Such footnote arguments are waived. Indeed, in the Second Circuit, courts "ordinarily deem an argument to be forfeited where it has not been sufficiently argued in the briefs… such as when it is only addressed in a footnote." *Luv N' Care, Ltd. v. Goldberg Cohen,* LLP, 703 Fed. Appx. 26, 29 (2d Cir. 2017). Consistent with this principle, courts have rejected footnote suggestions that documents may be susceptible to judicial notice where the party requesting judicial notice, as here, has not even attempted to meet its burden. *See, e.g.*, *Horne v. Ameris Bank*, 2023 WL 2908855, at *4 (N.D. Ga. Jan. 11, 2023), *report and recommendation adopted*, 2023 WL 2908838 (N.D. Ga. Feb. 13, 2023) ("In a footnote in its brief, Ameris argues that the Court should take 'judicial notice' of these documents as 'public records.' The Court, however, need not consider any argument set forth only in a footnote, and considers this argument to be waived."); *Shallenburg v. PNC Bank, N.A.*, 2020 WL 555447, at *12 (M.D. Fla. Feb. 4, 2020) ("To the extent that PNC requests the Court to consider [documents], the Court denies such request. Although PNC attaches these documents to the motion, the motion is devoid of any argument as to *why* such consideration is appropriate. PNC instead merely recites caselaw regarding a court's *ability* to consider certain documents.… Similarly, to the extent that PNC requests the Court to take judicial notice of the documents, the motion lacks any supporting argument…. PNC includes a footnote containing general judicial notice principles, but no argument for the applicability of these principles."); *Int'l Corrugated & Packing Supplies, Inc. v. Lear Corp. & Lear Mexican Seating Corp.,* 2016 WL 7410771, at *6 (W.D. Tex. Dec. 21, 2016), *aff'd*, 804 F. App'x 290 (5th Cir. 2020) ("The lack of analysis by Defendants leaves the Court assuming... whether the doctrine of incorporation by reference" applies).

Moreover, when "faced with a Rule 12(b)(6) motion to dismiss a § 10(b) action, courts must, as with any motion to dismiss for failure to plead a claim on which relief can be granted, accept all factual allegations in the complaint as true." *Tellabs, Inc.*, 551 U.S. at 322. The court must also "draw[] all reasonable inferences in the plaintiffs' favor." *Ganino v. Citizens Util. Co.*, 228 F.3d 154, 161 (2d Cir. 2000). Thus, to the extent that the "facts" presented in Defendants' proffered documents conflict with the allegations in the Complaint, as discussed below, the Court must grant deference to the Complaint. Indeed, the law is clear that the doctrine of judicial notice may *not* be used to establish facts or inferences that override the Complaint's well-pled allegations. *See, e.g., Melendez v. City of New York*, 16 F.4th 992, 1037 n.66 (2d Cir. 2021) ("it is more questionable whether we can [take judicial notice of] such statements as true when they pertain to matters in dispute or are not cast in the light most favorable to plaintiffs."); *Oneida Indian Nation v. New York*, 691 F.2d 1070, 1086 (2d Cir. 1982) (observing that judicial notice of disputed fact should not ordinarily be taken as basis for dismissing a complaint).

The same is true with respect to the SEC filings, news articles, and the purported interviews Defendants submit. *See In re Tommy Hilfiger, Sec. Litig.*, 2007 WL 5581705, at *5 (granting motion to strike news articles regarding market reaction as not proper subject of judicial notice); *Kasilingam v. Tilray, Inc.,* 2024 WL 4350118, at *2 (S.D.N.Y. Sept. 30, 2024) (declining to take judicial notice of Defendants' news articles and SEC documents that "[were] not incorporated into the [] Complaint"); *F.D.I.C. v. Adams,* 2013 WL 6044111, at *3 (N.D. Ga. Apr. 10, 2013) (declining to take judicial notice of testimony where defendants "urg[ed] this court to judicially notice certain facts [within the congressional testimony] they contend rebut the [plaintiffs'] allegations").

Defendants also attempt to misuse the doctrine of "incorporation-by-reference," impermissibly pointing throughout to their own self-serving words and other disputed accounts as the "truth." In rejecting this tactic, courts across the country have repeatedly explained that "documents attached to or incorporated by reference in the complaint… should be considered *only* for the purpose of determining what statements the documents contain, *not to prove the truth of the documents' contents*." *See, e.g., In re Enron Corp. Sec., Derivative & "ERISA" Litig.,* 439 F. Supp. 2d 692, 696 (S.D. Tex. 2006); *Gagnon v. Alkermes PLC*, 368 F. Supp. 3d 750, 763 (S.D.N.Y. 2019) ("[C]ourts may take judicial notice not of the truth in news article…."). "The incorporation-by-reference doctrine does *not* override the fundamental rule that courts must interpret the allegations and factual disputes in favor of the plaintiff at the pleading stage." *Khoja,* 899 F.3d at 1014 (collecting cases); *Akerman*, 608 F. Supp. 2d at 380–81 ("Despite the several 'heightened' pleading requirements imposed on securities fraud plaintiffs, their allegations are still accepted as true at the 12(b)(6) stage.").

\*\*\*

As explained further below: (i) **Exhibits 43, 48, 51, 52, 55, 60, 61, 62, 64, 68, 69, 70, 77, and 78**, are analyst reports that are not mentioned in the Complaint and cannot be considered for any purpose, including the purpose advanced by Defendants; (ii) **Exhibits 16, 17, 39, 40, 41, 42, and 44** are a transcript, presentation, and analyst reports briefly mentioned in the Complaint that cannot be considered for the facts Defendants cherry pick from those reports; (iii) **Exhibits 21 and 22** are presentations that are not referenced in the Complaint and cannot be considered for any purpose, including the purpose advanced by Defendants; (iv) **Exhibits 81, 82, 83, 84, 85, 87, 88, 89, 90, 95, 96, 99, 100, 101, 105-115**, are an assortment of extraneous SEC filings from non-party companies in the automotive space, news articles, website pages, interviews, raw data from

industry publications, and macroeconomic data touching generally on the health of the economy that cannot be considered for any purpose, including the purpose advanced by Defendants; and (v) **Exhibits 36, 57, 63, 71, 72, 93, and 103**, are exhibits that are not referenced in Defendants' briefing, and may be rejected as irrelevant on that basis.

      **A.**      **Defendants Introduce Cherrypicked Snippets Of Extrinsic Evidence That Are Not Subject To Judicial Notice Or Incorporation By Reference**

            **1.**      **The Analyst Reports Outside The Complaint Are Not Subject To Judicial Notice**

**Exhibits 43, 48, 51, 52, 55, 60, 61, 62, 64, 68, 69, 70, 77, and 78** are analyst reports and related extraneous evidence that are not referenced *anywhere* in the Complaint and that Defendants advance for a host of improper purposes, including: to buttress Defendant Tavares's credibility and minimize the Complaint's strong inference of scienter; to attribute Stellantis's high inventory to causes *other* than Defendants' channel stuffing scheme; to dispute the purpose and effect of Defendants' pricing actions; and generally to buttress the purported *fact* that investors as a whole were fully and fairly informed of Defendants' channel stuffing scheme and its disastrous impacts on Stellantis's financial health and prospects. *See e.g.*, MTD 16-17, 19-20, 22-23, 29-31, 49.

The Court must not consider Defendants' cherrypicked analyst reports because they are not integral to the Complaint. *See Hsu v. Puma Biotechnology, Inc.*, 213 F. Supp. 3d 1275, 1282 (C.D. Cal. 2016); *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.,* 367 F. Supp. 3d 16, 29 (S.D.N.Y. 2019) (declining to notice exhibits that were "not attached to the Complaint, incorporated by reference, or integral to the Complaint"); *S.E.C. v. Goldstone*, 952 F. Supp. 2d 1060, 1219 (D.N.M. 2013) ("the Court will not take judicial notice of the various analysts' reports attached to the Motions to Dismiss.").

Moreover, these 16 analyst reports are generally cited in Defendants' motion to dismiss for the truth of their contents. *See In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3

n.5 (D.N.J. Aug. 28, 2017) (denying judicial notice of analyst reports where "the inferences defendants wish to draw from these [analyst reports] go beyond the mere existence of statements within them"); *In re Mattel, Inc. Sec. Litig.*, 2021 WL 1259405, at *6 (C.D. Cal. Jan. 26, 2021) (refusing to take judicial notice of analyst reports for "the truth of the matters asserted"). Regardless, to the extent the Court determines to exercise its discretion to consider any of these analyst reports, it may only do so for the fact of their publishing, not for their contents. *Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*, 2023 WL 6541884, at *2 (E.D.N.Y. Oct. 6, 2023) (holding that a court may take judicial notice of "publicly-available documents such as news articles or reports by investment analysts," so long as the court only notices the fact of their publishing, "without regard to the truth of their contents").[2]

Defendants misuse of judicial notice principles is as follows:

**Exhibit 43** is an analyst report from August 25, 2023, not referenced in the Complaint, which Defendants introduce (in combination with **Exhibit 22)** to establish the fact of a looming union strike and to argue that the Company's high inventory was attributable to an intentional inventory buildup. MTD 6. But these purported facts, which contradict the Complaint's allegations that Stellantis's inventory buildup was caused by Defendants' channel stuffing (*see* ¶¶51-120), may not be considered for their truth.

**Exhibit 48** is an analyst report from January 24, 2024, not referenced in the Complaint, which Defendants advance for the supposed fact that "the Company's incentive spend increased throughout the Class Period." MTD 23. But this purported fact is, at minimum, highly misleading given that it is contradicted by Defendants themselves, who reported during the Class Period that

---

[2] Defendants' cited authority (MTD 3 n.3), which allowed judicial notice of analyst reports for the limited purpose of clarifying a vague statement made by Defendants, does nothing to redress Defendants' misuse of the 16 analyst reports they submit.

*net incentives decreased* as Defendants sought to prop up the Company's AOI margins. *See, e.g.,* Ex. 29 at 10 (4/30/24: "we were able to take our MSRP's down but take our incentives down at the same time so that *we saw a net pricing improvement*").

**Exhibit 51** is an analyst report from February 15, 2024, not referenced in the Complaint, which Defendants advance for the supposed facts that "pricing normalization, higher labor costs, and higher electric vehicle mix," were "likely to 'weigh on margins.'" MTD 12 n.9. This is improper. Moreover, Defendants' argument that investors were expressly warned of these facts, paired with their broader suggestion that factors other than Defendants' channel stuffing were responsible for Stellantis's excess inventory and erosion of pricing, is undermined by the report itself, which, like **Exhibit 42**, explicitly notes that Defendants' "[g]uidance reflects several headwinds, including pricing normalization…." Ex. 51 at 1.

**Exhibit 52** is an analyst report from February 16, 2024, not referenced in the Complaint, which Defendants advance for the purported generalized market view that "headwinds outweigh tailwinds." MTD 12 n.9. But the cited report was simply quoting management, and critically, based on Defendants' own statements, the same analyst report noted that "AOI in N. America… could be *flat/up y/y*, *implying a more cautious stance on Europe*." Ex. 52 at 1. This additional context, which Defendants omit through their selective quotation, confirms the Complaint's core allegation that analysts were "assuaged" concerning the sustainability of Stellantis's pricing in North America based on Defendants' misleading statements on February 15, 2024. *See, e.g.*, ¶¶46-50.

**Exhibit 55** is an analyst report from February 28, 2024, not referenced in the Complaint, which Defendants advance for the proposition that rising inventory *could* contribute to higher discounts. MTD 12 n.9. But this same analyst credited management representations about U.S. volume growth, which was "accretive to average pricing" (Ex. 55 at 4), and therefore, like the

10

analyst misleadingly cited in **Exhibit 52**, this analyst report confirms the Complaint's core allegation that analysts were "assuaged" concerning the sustainability of Stellantis's pricing in North America based on Defendants' misleading statements on February 15, 2024. *See, e.g.*, ¶¶46-50.

**Exhibit 60** is an analyst report from April 30, 2024, not referenced in the Complaint, which Defendants advance for the supposed fact that analysts were not "assuaged" by Defendants' false and misleading statements. MTD 14 n.10. But the report concedes the opposite, highlighting Defendants' representation that the second half of 2024 would "save the day." Ex. 60 at 1.

**Exhibit 61** is an analyst report from May 1, 2024, not referenced in the Complaint that simply repeats Defendants' statements concerning a decline in shipments, and which Defendants advance for the fact that analysts were not assuaged by their false and misleading statements. MTD 14 n.10. This is improper. Indeed, the report *contradicts* Defendants' assertion as it acknowledges that Defendants' "equity story [remained] intact" and viewed Stellantis's stock price decline as a "buying opportunity" given Defendants' purportedly "conservative" guidance. Ex. 61 at 1.

**Exhibit 62** is an analyst report from May 2, 2024, not referenced in the Complaint, which Defendants quote for the fact that the Company's first half of 2024 guidance was surprisingly low and the supposed fact that analysts were not assuaged by Defendants' false and misleading statements. MTD 14 n.10. This is improper. Indeed, the same analyst *was* assuaged, as the Complaint alleges analysts were generally, by Defendants' confirmation of full-year guidance and, like the analyst in **Exhibit 61**, reiterated a "buy" rating for Stellantis. Ex. 62 at 1.

**Exhibit 64** is an analyst report from June 7, 2024, not referenced in the Complaint, which Defendants advance for the supposed fact that Stellantis's U.S. incentives had caught up with peers *because* Stellantis purportedly "took efforts to lower vehicle prices and enhance incentives." MTD

11

14. This is improper. Indeed, the purported source for this fact is a chart from **Exhibit 64** that itself appears to be summarizing non-public data from "Motor Intelligence."

**Exhibit 68** is an analyst report from June 17, 2024, not referenced in the Complaint, advanced for the same proposition as **Exhibit 64** (MTD 14, 23) which cannot be judicially noticed for the same reasons. Moreover, contrary to Defendants' repeated assertion that analysts were not assuaged by Defendants' false and misleading statements, the same report highlighted Stellantis's "sustainability of profits" and reiterated its "buy" rating. Ex. 68 at 1.

**Exhibits 69 and 70** are analyst reports from June 17, 2024, not referenced in the Complaint, which Defendants advance for the fact that analysts were "attuned" to Stellantis's "high" U.S. inventory and the need to reduce it and for the supposed fact that analysts were not assuaged by Defendants' false and misleading statements. MTD 15 n.13. As with **Exhibits 64 and 68**, this is improper. Moreover, consistent with the Complaint's allegations that analysts were generally assuaged, these same analysts acknowledged Defendants' misleading reassurances about inventories and pricing, *see* Ex. 69 at 1 ("***management made clear that it is working on [inventories], with gradual improvements seen throughout the year***"), and did so specifically given Defendants' misleading double-digit margin guidance reaffirmation. *Id.* at 2 ("management confirmed its 2024 targets of a double-digit AOI margin.... Consensus is in line with guidance, expecting 10.5% in H1 and 11.4% in H2 2024").

### 2. Analyst Reports and Transcripts Briefly Referenced In The Complaint Are Not Subject To Judicial Notice

"A mere passing reference or even references... to a document outside of the complaint does not, on its own, incorporate the document into the complaint itself." *S.E.C. v. Medallion Fin. Corp.*, 2022 WL 3043224, at \*1 (S.D.N.Y. Aug. 2, 2022). As discussed below, Defendants' attempt to introduce analyst reports and transcripts briefly referenced in the Complaint fails.

**Exhibit 16** is a transcript of an analyst call hosted by Stellantis on March 1, 2022, briefly referenced in the Complaint, which Defendants advance for the improper purpose of establishing the fact that "[t]he Dare Forward 2030 goals were *always* presented as lofty aspirations." MTD at 5. This transcript and its associated facts are not properly subject to judicial notice or incorporation by reference, and otherwise confirm that the Dare Forward 2030 goals were not *always* presented as lofty aspirations. *See* Ex. 16 at 14 ("I don't think that we have many companies right now who would *commit* on the fact that we double our net revenue and that we *commit* on the double-digit floor for the profitability of the company over the next nine years."); *see, e.g.*, *S.E.C.*, 2022 WL 3043224, at *1.

**Exhibit 17** is a presentation by Stellantis dated March 1, 2022, briefly referenced in the Complaint, advanced by Defendants to establish the irrelevant fact that Stellantis bet on the future of electrification. MTD 5. Defendants in turn improperly leverage this purported fact as an alternative excuse for the precipitous collapse of the Company's margins (MTD at 1, 51-52), which contradicts the Complaint's allegations as to the causes of Stellantis's stock price declines. *See, e.g.*, ¶212; *see generally* ¶¶193-213. This is improper. *See, e.g.*, *S.E.C.*, 2022 WL 3043224, at *1.

**Exhibits 39, 40, 41, 42, and 44** are analyst reports briefly referenced in the Complaint that Defendants impermissibly introduce for their truth, and are thus not subject to judicial notice or incorporation by reference. *See Alkermes*, 368 F. Supp. 3d at 762-63 (declining to consider materials showed during "investor presentations" that were mentioned, but "not attached to the complaint") (quoting *Alexander v. Possible Prods., Inc.*, 336 F. Supp. 3d 187, 194 (S.D.N.Y. 2018)); *see also Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004) ("Limited quotation from or reference to documents that may constitute relevant evidence in a case is not enough to incorporate those documents, wholesale, into the complaint.").

13

Specifically, **Exhibits 39 and 40** are analyst reports from March 1 and 2, 2022 that Defendants introduce for the supposed facts that Stellantis's Dare Forward 2030 margin targets were "unprecedented" and "embed[ed] material execution risk." MTD 5. But these same analyst reports stand for the opposite proposition: analysts reserved their skepticism for Defendants' *revenue* targets and were "on the flip side… confident on the group's ability to meet its AOI margin targets" (Ex. 40 at 4), based on Tavares's representations that Stellantis was "absolutely committed" to deliver the Dare Forward 2030 plan targets and that Stellantis was *already* reporting double digit margins (Ex. 18 at 22).

**Exhibits 41** is an analyst report from February 23, 2023, briefly mentioned in the Complaint, and **Exhibit 82** is an article from *Forbes* from August 24, 2018, not referenced in the Complaint, which Defendants use to attempt to establish Defendant Tavares's supposed credibility and ability to drive profitability prior to his tenure as CEO of Stellantis. MTD 3. These exhibits, which Defendants thematically leverage as evidence of Defendant Tavares's character and reputation with investors, are irrelevant to the elements of fraud, including whether the Complaint alleges a cogent inference of scienter, and must be rejected.

**Exhibit 42** is an analyst report from May 3, 2023, briefly referenced in the Complaint, which Defendants introduce to establish supposed market knowledge of the fact that rising inventory levels *could* negatively impact Stellantis's pricing power in the future. MTD 6. This is improper. Moreover, Defendants' argument that investors were expressly warned of this fact (*id.*) and broader suggestion throughout their Motion that macroeconomic factors were responsible for Stellantis's excess inventory and subsequent erosion of pricing is undermined by the report itself. Specifically, the report notes that "a good deal of [price] normalization" and "a good deal of bad

14

news" was already discounted from Stellantis's stock price and that Stellantis itself was "*less dependent than peers on macro growth assumptions*." *Id.* at 1, 2.

**Exhibit 44** is an analyst report from October 31, 2023 introduced for the supposed fact that investors understood that Stellantis's inventory should be trimmed. MTD 8 n.6. But the full analyst report makes clear, as the Complaint alleges, that *any* concerns over inventory and pricing were "already largely priced in." Ex. 44 at 1 ("Stellantis was the first OEM to deliver a Q3 beat thanks to (still) solid pricing. Peak profitability fears won't disappear, but at c.3x PE already seem largely priced in.").

### 3.  Transcripts And Presentations Outside The Complaint Are Not Subject To Judicial Notice

**Exhibits 21 and 22** are earnings presentations, not referenced in the Complaint, which Defendants advance to suggest that a chip shortage was a contributing factor to the Company's stock price declines and that inventory levels had returned to "normal" levels. The Court must decline to notice these improper submissions for their truth. *See, e.g.*, *Scholastic,* 1998 WL 560052, at *2 (declining to consider transcript and synopsis of phone call that was not mentioned in the complaint); *Agostino v. Simpson*, 2008 WL 4906140, at *3 (S.D.N.Y. Nov. 17, 2008) (improper to consider transcript where defendants proffered it for its truth).

**Exhibit 21** is Stellantis's Q1 2023 earnings presentation entitled "First Quarter 2023 Revenues," not referenced in the Complaint, which Defendants introduce to establish the fact that the chip shortage eased, leading to an increase in shipments and revenues, thereby providing an alternative excuse for Stellantis' negative Class Period disclosures on those topics. MTD 1, 6. This purported fact-related inference contradicts the Complaint's allegations as to the causes of Stellantis's stock price declines. *See, e.g.*, ¶212; *see generally* ¶¶193-213. This is improper.

**Exhibit 22** is Stellantis's H1 2023 earnings presentation entitled "First Half 2023 Results," not referenced in the Complaint, which Defendants improperly introduce for the fact that inventories "returned to normal levels" and were otherwise intentionally built up in anticipation of production disruptions. MTD 6. These purported facts directly contradict the Complaint's well-pled allegations as to the causes of Stellantis's inventory buildup and must be rejected. *See, e.g.*, ¶¶139-143.

### 4.  Articles And Data Sources Outside The Complaint Are Not Subject To Judicial Notice

The Complaint does not cite to or mention—much less "refer[] extensively" to—**Exhibits 81-85, 87-89, 90, 95, 96, 99-101, 105-115**, which are an assortment of extraneous SEC filings from non-party companies in the automotive space, news articles, website pages, interviews, raw data from industry publications, and macroeconomic data touching widely on the health of the economy. Defendants generally advance these exhibits for their truth and to support their counterfactual argument that factors *other* than Defendants' channel stuffing scheme were responsible for the deterioration of Stellantis's financial health and prospects. *Orexigen*, 899 F.3d at 1002.

The Court must decline to notice these improper submissions. *See Torain v. Clear Channel Broad., Inc.*, 651 F. Supp. 2d 125, 142 n. 11 (S.D.N.Y. 2009) (declining to take judicial notice of "irrelevant" "newspaper articles"); *Tilray,* 2024 WL 4350118, at *2 (declining to take judicial notice of Defendants' news articles and SEC documents that "[were] not incorporated into the [] Complaint"); *In re Pfizer Inc. Sec. Litig.,* 584 F. Supp. 2d 621, 634 (S.D.N.Y. 2008), *abrogated by Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) (declining to take judicial notice of data interpretations proffered by Defendants); *Hills v. BioXcel Therapeutics, Inc.,* 2024 WL 3374145, at *5 (D. Conn. July 11, 2024) (improper to consider data and statistics to

16

refute plaintiff's well-pled facts); *City of Austin Police Ret. Sys. v. Kinross Gold Corp.,* 957 F. Supp. 2d 277, 288, 308 (S.D.N.Y. 2013) (rejecting judicial notice of industry and macroeconomic data and noting that "even if it were appropriate to take judicial notice of the fact of [general industry factors] during 2011, the Court assuredly could not take notice of the fact (if indeed true) that such [factors] were what *caused*" the negative disclosures). Indeed, the very line of authority cited by Defendants concedes this point. *See* MTD 3 n.3 (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007) (citing *Rothman v. Gregor*, 220 F.3d 81, 97-98 (2d Cir. 2000)) (declining to credit "a comprehensive, monthly report that tracks the sales of video game hardware and software of top retailers in the United States" mentioned in plaintiff's complaint as having provided notice of the sales figures in the report)).

**Exhibits 89, 95, 96, 99, 101, 106, 110-11, and 113-15**, which are a series of automotive industry and other publications advanced to establish days' supply, average transaction prices, and other statics such as interest rates and consumer sentiment, cannot be judicially noticed. Nor may the Court credit Defendants' attempts to leverage these same extrinsic documents to advance an alternate excuse for Stellantis's poor financial performance in 2024. *See In re 2007 Novastar Fin. Sec. Litig.*, 2008 WL 2354367, at *1 (W.D. Mo. June 4, 2008), *aff'd,* 579 F.3d 878 (8th Cir. 2009) ("[J]ust as the Court could take judicial notice of the fact that the country suffered from the Great Depression in the 1930s, the Court *cannot use that fact to infer anything in particular about a business operating at the time*. In short, while the Court can take judicial notice of the fact that the Company's industry suffered reversals, the Court *cannot take judicial notice of the impact of those industry-wide reversals on the Company*.").

**Exhibit 81** is an online article from January 31, 2018 by Cars.com and **Exhibit 92** is an excerpt of AutoNation, Inc.'s Annual Report on Form 10-K for the period ended December 31,

17

2023. These exhibits, which are not referenced in the Complaint, are advanced by Defendants to establish the supposed facts that dealerships receive various incentives from manufacturers and that bonus programs are not "unusual." MTD 29. Not only is this improper on a motion to dismiss, but Defendants' documents support Plaintiff's claims that the specific incentives employed in furtherance of Defendants' channel stuffing scheme were not fully and fairly disclosed. *See* Ex. 81 at 2 ("it's difficult for new car shoppers to know the exact incentives offered to local dealers by manufacturers"). And Defendants offer no evidence whatsoever to suggest that the incentives provided to AutoNation, the largest dealership in the United States that carries brands from many car manufacturers, are available to any of Stellantis's captive dealerships. **Exhibit 92** must be rejected. *See Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (a court may only judicially notice SEC filings "to determine *what* the documents stated," and "not to prove the truth of their contents"); *S.E.C. v. Passos*, 760 F. Supp. 3d 95, 110-11 (S.D.N.Y. 2024) ("courts may take judicial notice of [SEC filings], though only to establish that the matters had been publicly asserted, rather than for the truth of their contents.").

**Exhibit 82** is an article from *Forbes* from August 24, 2018, not referenced in the Complaint, which Defendants use to attempt to establish Defendant Tavares's supposed credibility and ability to drive profitability prior to his tenure as CEO of Stellantis. MTD 3. This exhibits, which Defendants thematically leverage as evidence of Defendant Tavares's character and reputation with investors, are irrelevant to the elements of fraud, including whether the Complaint alleges a cogent inference of scienter, and must be rejected.

**Exhibit 83** is an article by Detroit News from October 31, 2019, not referenced in the Complaint, which Defendants advance for the fact that Stellantis's U.S. days' supply in 2024 was below pre-COVID levels. MTD 17. The 2019 article references Edmunds as the source for its

days' supply metric, which is different from the Cox Automotive sources Defendants cite for the same proposition (and which appears to employ a different formula for calculating days' supply). *See e.g.* Ex. 89. Defendants then attempt to compare the Edmunds-sourced number, which they urge the Court to judicially notice for its truth, to a number quoted by Defendant Knight from an unknown source. MTD 17. This is improper.

**Exhibit 84 and 85** are articles from ShopOwner.com and Dealerware.com from February 19, 2021 and July 29, 2021, not referenced in the Complaint, which Defendants advance for the fact that cash incentives for putting cars in courtesy transportation programs are "standard market practice" and that such programs benefit dealerships and OEMs. MTD 30-31. But the articles, which the Court may not consider for their truth, say nothing to even suggest that 30 days in a CTP program, as opposed to six months (while paying the same cash incentive), is "standard market practice." The Complaint, based on credible and corroborated sources, alleges that it was not (¶¶92-99), and that Defendants used the CTP program to incentivize dealers to take more inventory in furtherance of their channel stuffing scheme. *Id.*

**Exhibit 87** is an article from February 22, 2023, not referenced in the Complaint, recommending that investors purchase Stellantis stock over that of GM and Ford because of its higher AOI margins. MTD 5. Defendants improperly advance this supposed fact to establish Stellantis's purported "success" and "record" AOI margins, which were higher than those of Ford and GM. Ex. 87. This is improper. Indeed, only late in the Class Period did analysts even begin to understand that Stellantis's reported margins were calculated differently than—and thus should not be directly compared to—those of its competitors. *See, e.g.*, Ex. 76 ("On the surface of it, the 10% margin in H1 suggests this is indeed still justified. However, looking at the details we note significantly increased adjustments y/y… meaning the stated EBIT margin was actually only 7.8%

19

- worse than RNO and probably similar to VW."). In any event, the Complaint alleges that those reported AOI margins were misleading because they were propped up by the channel stuffing scheme. *See, e.g.*, ¶145.

**Exhibit 88** is another article from June 8, 2023, not referenced in the Complaint, which Defendants advance for the supposed fact that vehicles in the CTP program had to be "used." MTD 30. The article is irrelevant or at most contradicts the Complaint's core allegation, corroborated by multiple FEs, that Defendants modified the CTP program to impose only *de minimis* use requirements, all for the same cash incentive to dealers. ¶¶92-99. Indeed, the article from before the Class Period *supports* the Complaint's allegations that 500 miles in Defendants' modified CTP program is, in fact, unusual. Ex. 88 ("CTP vehicles usually have between 2000 and 4000 miles."); ¶¶92-99.

**Exhibit 90** is an interview with the head of the NDC from January 29, 2024, not referenced in the Complaint, which Defendants improperly advance to "contradict" and discredit the substance of the NDC letter. MTD 9, 49. That Stellantis may have "worked closely with dealers to address their concerns" in January 2024 (MTD 49 (citing Ex. 90 at 8)), however, does not explain how working on a problem "contradicts" any specific fact in the NDC letter. And the interview further stresses that Stellantis "could do a better job of really working on our inventory concerns—that would probably be the one thing that I would say we need to work better." Ex. 90 at 7. Defendants' "contradict[ing]" evidence is thus consistent with the core thesis of the NDC letter that Stellantis and its dealers were engaged in discussions for over two years concerning the unsustainability of the Company's pricing strategy. *See* ¶¶139-143.

**Exhibit 100** is an article from August 21, 2024, not referenced in the Complaint, which Defendants advance to establish the fact that Tavares was widely regarded as the "best executive

20

in the [automotive] industry." MTD 3 (Ex. 100 at 4). This exhibit, which Defendants attempt to thematically leverage as evidence of Defendant Tavares's character and reputation with investors, is irrelevant to the elements of fraud, including whether the Complaint alleges a strong inference of scienter, and must be rejected.

**Exhibit 105** is a press article and interview with the Head of Jeep from September 13, 2024 that was published days *after* the NDC letter and completed well before the publication of the NDC letter. Exhibit 105 is not referenced in the Complaint, and Defendants advance it for the supposed fact that Stellantis's use of incentives was publicly discussed. MTD 23. But the dated interview, which generically discloses the use of incentives implemented in the second half of 2024, mirrors Defendants' misrepresentations. *Compare* Ex. 105 ("So we strongly believe that what we have now implemented... is working…. We acted on price, on commercial policies through incentives, we intensified our marketing."); *with* ¶142 ("It is time to turn production back on and start selling our way back to a respectable market share. Get your employees, our employees, and your suppliers' employees, back to work by building and selling cars that Americans want to buy *and can afford*. *Let us clear out this old inventory now* and get the plants working at full capacity. Yes, in the very short term, it will be painful for Stellantis, but mistakes at this level usually are. We do not want your apology or your resignation – those do not put people back to work. *We simply ask that you do the right thing: write the check, pay your bill, and let's move forward.*").

**Exhibits 107-109** are press releases by Mercedes, Volvo, and Volkswagen from September 19 and October 23, 2024, not referenced in the Complaint, which Defendants advance for the supposed fact that a selection of other automobile manufacturers "also felt the brunt of a 'challenging market environment' and deteriorating macroeconomic conditions, softening

21

'industry demand' overall, 'recently accelerated' 'weakness in the market,' and 'deterioration in the macroeconomic' and 'pricing environment.'" MTD 18-19 (citing Ex. 107 at 1). These facts, and the exculpatory causal connection that Defendants advance, contradict the Complaint's well-pled allegations and core judicial notice principles. *See, e.g.*, *2007 Novastar*, 2008 WL 2354367, at \*1 ("In short, while the Court can take judicial notice of the fact that the Company's industry suffered reversals, the Court cannot take judicial notice of the impact of those industry-wide reversals on the Company."). Moreover, Defendants' after-the-fact macroeconomic excuse for Stellantis's poor performance is belied by the Company's stock price performance which, *despite* warnings from Stellantis's competitors about deteriorating macroeconomic conditions, fell by 12.5% on September 30, 2024, confirming that Company specific factors were the cause of Stellantis's stock price decline.

**Exhibit 112** is an announcement by Stellantis fleet from April 4, 2025, not referenced in the Complaint, which Defendants advance to establish the fact that dealers were free to sell inventory at whatever price they chose during the Class Period. MTD 4. This incentive program, which comes well *after* the end of the Class Period, cannot be used to establish any purported fact about Stellantis's incentive programs during the Class Period.

### B.    Defendants Improperly Seek Judicial Notice Of 7 Exhibits That Are Referenced Nowhere In Their Briefing

Emblematic of Defendants' overbroad attempt to misuse the judicial notice and incorporation by reference doctrines, Defendants introduce and seek to have the Court consider **Exhibits 36, 57, 63, 71, 72, 93, and 103**, which are *nowhere* referenced in Defendants' briefing. The Court should decline to judicially notice these exhibits. *See Clear Channel*, 651 F. Supp. 2d at 142 n. 11 (declining to take judicial notice of "irrelevant" "newspaper articles").

22

## IV.    CONCLUSION

For the foregoing reasons, the Motion to Strike Exhibits to Defendants' Motion to Dismiss should be granted. Defendants' threadbare suggestion that the Court take judicial notice of, and incorporate by reference, snippets from their 115 exhibits is improper. The Court should exercise its inherent power to reject Defendants' disputed version of events and resolve any factual disputes in Plaintiff's favor. If the Court chooses to take judicial notice or incorporate into the Complaint any of these documents, Plaintiff respectfully requests that the Court not assume the truth of any statement therein or accept Defendants' proffered inferences based on their self-serving and cherrypicked quotations and version of the facts.

Dated: September 12, 2025            **BERNSTEIN LITOWITZ BERGER**
                                       **& GROSSMANN LLP**

                          By: /s/ *Rebecca E. Boon*
                          Salvatore J. Graziano
                          Rebecca E. Boon
                          Alec T. Coquin
                          Rebecca S. Temkin
                          1251 Avenue of the Americas
                          New York, New York 10020
                          Telephone: (212) 554-1400
                          Facsimile: (212) 554-1444
                          salvatore@blbglaw.com
                          rebecca.boon@blbglaw.com
                          alec.coquin@blbglaw.com
                          rebecca.temkin@blbglaw.com

                          *Attorneys for Lead Plaintiff Boston*
                          *Retirement System*

## CERTIFICATE OF COMPLIANCE WITH WORD COUNT

I, Rebecca E. Boon, an attorney duly admitted to practice before this Court, hereby certify pursuant to Rule 5(B) of the Honorable Jennifer H. Rearden's Individual Rules and Practices in Civil Cases, and Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the foregoing Memorandum of Law contains 7,230 words. In making this calculation, I have relied on the word count of the word-processing program used to prepare this Memorandum.

Dated: September 12, 2025
　　　New York, New York

　　　　　　　　　　　　　　　　　　　/s/ Rebecca E. Boon
　　　　　　　　　　　　　　　　　　　Rebecca E. Boon