# BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

## ATTORNEYS AT LAW

NEW YORK   ●   CALIFORNIA   ●   ILLINOIS   ●   LOUISIANA   ●   DELAWARE

REBECCA E. BOON
Rebecca.Boon@blbglaw.com
(212) 554-1594

October 8, 2025

**Via ECF**

The Honorable Jennifer H. Rearden
United States District Judge
United States District Court
  for the Southern District of New York
500 Pearl Street
New York, New York 10007

> Re:   ***Steven Long, et al. vs. Stellantis N.V., et al.*, No. 24 Civ. 6196 (JHR-GS) —
> Lead Plaintiff's Notice of Supplemental Authority**

Dear Judge Rearden:

We write on behalf of Lead Plaintiff to advise the court of an authority published after Plaintiff filed its Opposition to Defendants' Motions to Dismiss ("Opp.," ECF No. 60): *Gimpel v. The Hain Celestial Group, Inc.*, --- F.4th ---, 2025 WL 2749562 (2d Cir. Sept. 29, 2025), which is attached. Defendants cited Magistrate Judge Lee G. Dunst's decision below in *Hain* multiple times in their motion to dismiss. *See* ECF No. 57 citing *In re Hain Celestial Grp. Inc. Sec. Litig.*, 2022 WL 18859055, at *3 (E.D.N.Y. Nov. 4, 2022), *report and recommendation adopted*, 2023 WL 6360345 (E.D.N.Y. Sept. 29, 2023). *Hain* is relevant on several points:

***Falsity****. Hain* found actionable several statements "discussing Hain's financial success" because the statements were misleading "half-truths" in light of Hain's failure to disclose its "channel-stuffing practices." 2025 WL 2749562, at *11. The court first explained that "[f]ailing to

1

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Jennifer H. Rearden
October 8, 2025
Page 2

disclose the existence of channel stuffing . . . is misleading because investors would want to know that revenue is not being driven by increased demand but by sales tactics that will likely prove unsustainable once distributors reach maximum inventory and the company can no longer flood them with product." *Id.* at *9. The *Hain* court then found that it was materially misleading to "repeatedly attribute[] [Hain's] financial results . . . to factors such as" "strong demand," without disclosing that Hain "allegedly achieved its financial results in no small part by" channel stuffing. *Id.* at 11. By "putting the reasons for the company's success at issue," the court found that Hain assumed a "duty to tell the whole truth," including by disclosing the channel stuffing as a "material source of its success." *Id.* This holding supports Plaintiff's argument that Defendants' statements attributing Stellantis's AOI margins and financial success more generally to "carefully calibrated pricing" and similar statements, *see, e.g.*, ¶¶ 39-41, are actionable misleading half-truths because they failed to disclose that the results were driven by Defendants' channel stuffing scheme. Opp. at 26, 33, 37, 42.

*Hain* similarly found actionable statements admitting concerns about inventory levels but downplaying the issue as "one-offs" where the "inventory saturation" caused by defendants' channel stuffing scheme "would persist." *Id.* at *12 (citing *Novak v. Kasaks*, 216 F.3d 300, 311-312 (2d Cir. 2000) and *Oklahoma Firefighters Pension & Ret. Sys. v. Lexmark Int'l, Inc.*, 367 F. Supp. 3d 16, 32 (S.D.N.Y. 2019)). *Hain* also found other statements concerning inventory levels and declining sales actionable, including statements "downplaying inventory concerns," *id.*, and "attributing declining sales to distributor and account shifts, rather than inventory saturation from channel stuffing," *id.* These holdings support Plaintiff's argument that Defendants' statements

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Jennifer H. Rearden
October 8, 2025
Page 3

describing Stellantis's inventory crisis as a "bump on the road" and downplaying inventory concerns are actionable misleading half-truths. Opp. at 15.

*Truth-on-the-market*. *Hain* was "unpersuaded" that warnings by defendants—nearly identical to those cited by Defendants here—that Hain undertook "[s]ales incentives and promotions" such as "price discounts, slotting fees and coupons" in an effort to "support sales of the Company's products" sufficed to establish a truth-on-the-market defense. 2025 WL 2749562, at *12. Specifically, *Hain* held that the "statement that [Hain] used various incentives and promotions did not disclose that it offered distributors a right to return product. And because the 'truth-on-the-market defense' is a fact-intensive inquiry, whether Hain's generic language about offering sales incentives and promotions sufficiently counterbalanced the statements that attributed sales growth to growing demand should not be resolved at the pleadings stage." *Id. Hain* also found that the "boilerplate statement" that "[s]ales are reported net of sales and promotion incentives," nearly identical to the same language advanced by Defendants here, "would [not] inform a reasonable investor [of] Hain's increasing reliance on credits, discounts, and incentives [to] propel[] those sales numbers." *Id*. These holdings support Plaintiff's argument that Defendants' boilerplate and unchanging disclosures are insufficient to establish truth-on-the-market at the pleading stage. Opp. at 18.

*Scienter*. *Hain* found a strong inference of scienter based on a holistic analysis that included several circumstances alleged here. To start, applying the "direct link" standard, *Hain* gave "weight" to allegations that the individual defendants had a motive to commit fraud because "bonuses they received were tied to the very metrics" inflated by the fraud. 2025 WL 2749562, at

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Jennifer H. Rearden
October 8, 2025
Page 4

*14. *Hain* supports Plaintiff's allegations of motive, which allege a direct link between Defendants' channel stuffing scheme and the metrics and targets for Defendants Tavares's bonuses and stock awards. Opp. at 51-53.

*Hain* also credited the allegation that "Defendants maintained an inappropriate 'tone at the top,' i.e., a company culture of secrecy and fear . . . ." 2025 WL 2749562, at *16, which is similar to allegations here. Opp. at 49.

In addition, *Hain* credited the inferences that arose because the "alleged fraud touched on . . . areas of critical import to [the defendant-corporation] and its executives" and from "the *importance* of this alleged fraud to [the defendant-corporation]." 2025 WL 2749562, at *16-17 (emphasis in original). Even though the channel stuffing contributed ***only 2.4%*** of Hain's net sales, the court noted that the "total *size* of this alleged fraud is comparable to other cases in which we have credited scienter allegations." *Id.* at *16 (emphasis in original). The Second Circuit clarified that the validity of the "core-operations" doctrine remains an open question and that the Court was instead relying on the "magnitude of the fraud" doctrine, i.e., "the size of the alleged fraud, coupled with its importance to [the company's] operations." *Id.* at *16 n.19. Here too, the scale, scope, duration, and severity of the fraud, and the fact that Stellantis's North American operations contributed approximately half of Company's profitability, support an inference of scienter. Opp. at 47-49.

Finally, *Hain* held that "key personnel changes . . . may add to the total mix of circumstantial evidence." 2025 WL 2749562, at *17. *Hain* credited allegations that departures were "somehow tied to the fraud alleged," such as the allegation that Hain's CFO departed as Hain

BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP

The Honorable Jennifer H. Rearden
October 8, 2025
Page 5

"announced its remedial measures." *Id.* Here too, both Executive Defendants departed while

Stellantis was in the process of remediating the excess inventory created by Defendants' channel

stuffing scheme. Opp. at 50.

      We thank the Court for its attention to this matter.


                Sincerely,

                /s/ *Rebecca E. Boon*
                Rebecca E. Boon