UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| STEVEN LONG, Individually and on Behalf of All Others Similarly Situated,<br><br>              Plaintiff,<br><br>              v.<br><br>STELLANTIS N.V., CARLOS TRAVARES, and NATALIE M. KNIGHT,<br><br>              Defendants. | Case No. 1:24-cv-06196-JHR-GS<br><br>ORAL ARGUMENT REQUESTED |

**MEMORANDUM OF LAW IN OPPOSITION TO LEAD PLAINTIFF'S
MOTION TO STRIKE EXHIBITS TO DEFENDANTS' MOTION TO DISMISS**

## TABLE OF CONTENTS

**TABLE OF AUTHORITIES** ................................................................................................. ii

**TABLE OF ABBREVIATIONS** .......................................................................................... v

**PRELIMINARY STATEMENT** ......................................................................................... 1

**LEGAL STANDARD** .......................................................................................................... 1

**ARGUMENT** ....................................................................................................................... 2

**I.    DEFENDANTS DID NOT WAIVE THEIR RIGHT TO REQUEST JUDICIAL NOTICE** ......................................................................................................................... 2

**II.   THE COURT SHOULD CONSIDER THE DOCUMENTS DEFENDANTS SUBMITTED IN RESOLVING DEFENDANTS' MOTION TO DISMISS** ................. 3

    A.    The Court May Consider Analyst Reports Outside the Complaint ................................... 3

    B.    SEC Filings, Call transcripts, and Presentations Are Subject to Both Judicial Notice and Incorporation By Reference ................................................................................... 7

    C.    News Articles and Industry Data Sources Are Subject to Judicial Notice ....................... 8

    D.    The Court May Consider The Remaining Documents ....................................................... 10

**CONCLUSION** ................................................................................................................. 10

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*,
   28 F.4th 343 (2d Cir. 2022) ...................................................................................................4, 7

*City of Austin Police Ret. Sys. v. Kinross Gold Corp.*,
   957 F.Supp.2d 277 (S.D.N.Y. 2013)...........................................................................................8

*Cohen v. Cap. One Funding, LLC*,
   489 F.Supp.3d 33 (E.D.N.Y. 2020) ............................................................................................3

*Colbert v. Rio Tinto PLC*,
   824 Fed. Appx. 5 (2d Cir. 2020).................................................................................................4

*Damri v. LivePerson, Inc.*,
   772 F.Supp.3d 430 (S.D.N.Y. 2025)........................................................................................1, 8

*Dixon v. NBCUniversal Media, LLC*,
   947 F.Supp.2d 390 (S.D.N.Y. 2013)..........................................................................................10

*In re FuBo TV Inc. Sec. Litig.*,
   2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) ...........................................................................1, 4

*Gagnon v. Alkermes PLC*,
   368 F. Supp. 3d 750 (S.D.N.Y. 2019).........................................................................................8

*Gray v. Wesco Aircraft Holdings, Inc.*,
   454 F.Supp.3d 366 (S.D.N.Y. 2020)...........................................................................................2

*Harborview Master Fund, LP v. Lightpath Techs., Inc.*,
   601 F.Supp.2d 537 (S.D.N.Y. 2009)...........................................................................................3

*Hills v. BioXcel Therapeutics, Inc.*,
   2024 WL 3374145 (D. Conn. July 11, 2024) ...............................................................................8

*IHS Dialysis Inc. v. Davita, Inc.*,
   2013 WL 1309737 (S.D.N.Y. Mar. 31, 2013) ..............................................................................7

*Kasilingam v. Tilray, Inc.*,
   2024 WL 4350118 (S.D.N.Y. Sept. 30, 2024)...............................................................................9

*Kou v. Medis Tech., Ltd.*,
   07-cv-3230, ECF No. 21 (S.D.N.Y. February 5, 2008)..................................................................2

*Kramer v. Time Warner Inc.*,
  937 F.2d 767 (2d Cir.1991)....................................................................................................4, 8

*Lanigan Grp. v. Li-Cycle Holdings Corp.*,
  2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023).............................................................................2

*Levine v. City of New York*,
  2002 WL 5588 (S.D.N.Y. Jan. 2, 2002) ...................................................................................5

*Lipow v. Net1 UEPS Techs., Inc.*,
  131 F.Supp.3d 144 (S.D.N.Y. 2015)......................................................................................1, 4

*Long Miao v. Fanhua, Inc.*,
  442 F.Supp.3d 774 (S.D.N.Y. 2020)..........................................................................................1

*Luv N' Care, Ltd. v. Goldberg Cohen, LLP*,
  703 F.App'x. 26 (2d Cir. 2017) ................................................................................................3

*Malin v. XL Capital Ltd.*,
  499 F.Supp.2d 117 (D. Conn. 2007),.........................................................................................3

*In re Pfizer Inc. Sec. Litig.*,
  584 F. Supp. 2d 621 (S.D.N.Y. 2008), *abrogated by Dekalb Cnty. Pension
  Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016) .............................................................9

*Porwal v. Ballard Power Sys., Inc.*,
  2019 WL 1510707 (S.D.N.Y. Mar. 21, 2019) ......................................................................1, 8

*S.E.C. v. Medallion Fin. Corp.*,
  2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022)...........................................................................8

*Sierra v. U.S.*,
  1998 WL 599715 (S.D.N.Y. Sept. 10, 1998)...........................................................................7

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
  547 F.3d 406 (2d Cir. 2008)..................................................................................................1, 4

*In re Tommy Hilfiger, Sec. Litig.*,
  2007 WL 5581705 (S.D.N.Y. July 20, 2007) .........................................................................5

*Torain v. Clear Channel Broad., Inc.*,
  651 F.Supp.2d 125 (S.D.N.Y. 2009).......................................................................................8

**Other Authorities**

Fed. R. Civ. Proc. 12(b)(6) .......................................................................................................3

Fed. R. Evid. 201 ...........................................................................................................3, 5, 9, 10

Fed. R. Evid. 201(b)................................................................................................................1, 8

Fed. R. Evid. 201(c)(1) ..............................................................................................................3

Fed. R. Evid. 201(d)...................................................................................................................2

Reuters, *UAW reaches deal with GM, ends coordinated strikes against Detroit automakers*, Oct. 30, 2023, https://www.reuters.com/business/autos-transportation/uaw-reaches-deal-with-gm-ends-coordinated-strikes-against-detroit-automakers-2023-10-30 ...............................................................................................6

**TABLE OF ABBREVIATIONS**

| Term | Definition |
|---|---|
| ¶ | Paragraph of the Amended Complaint (ECF 49) |
| [] FY | Fiscal Year [], starting on January 1 and ending on December 31 |
| 23Q3 Earnings Call | October 31, 2023, earnings call regarding results for third quarter of 2023 |
| 23FY Earnings Call | February 15, 2024, earnings call regarding results for fiscal year 2023 |
| 24Q1 Earnings Call | April 30, 2024, earnings call regarding results for first quarter of 2024 |
| AC | Amended Complaint (ECF 49) |
| AOI | Adjusted Operating Income |
| AOI Margin | Adjusted Operating Income Margin |
| ATP | Average transaction price |
| BoA Conference | September 23, 2024, Bank of America European Autos and Future Car Conference |
| bps | Basis points |
| Challenged Statements or Statements | The allegedly false and/or misleading statements challenged in the AC. *See* AC § VI (Annex A) |
| Class Period | October 31, 2023, to September 27, 2024 |
| CNBC's Power Lunch | Interview between Tavares and CNBC correspondent Phil LeBeau on June 13, 2024 |
| Company | Stellantis |
| Coupon Program | Coupon incentive program referenced at ¶¶100–102 |
| CP | Class Period |
| CTP | Courtesy Transportation Program |
| Dealer FEs | Collectively, confidential witnesses who work(ed) at Stellantis dealerships |
| Dealer(s) | Authorized distributors of Stellantis automobiles |
| Detroit Three | Stellantis, Ford, and General Motors |
| DoS | "Days (of) Sales" or "Days (of) Supply"; the number of days required to sell all retail inventory at the current sales pace |

| Term | Definition |
|---|---|
| EV(s) | Electric vehicle(s) |
| Ex. | Exhibit to the Declaration of Yevgeniya Lotova, executed June 30, 2025 (ECF 56), or the Second Declaration of Yevgeniya Lotova, executed October 27, 2025.  Unless otherwise noted, pincites to these exhibits reference the page numbers of the exhibits themselves. |
| Executives | Individual Defendants |
| FCF | Free cash flow |
| FE# | Alleged former Stellantis or Stellantis Dealer employees referenced in AC |
| Ford | Ford Motor Company |
| FX | Foreign Exchange |
| GM | General Motors Company |
| Goldman Sachs Conference | December 6, 2023, conference hosted by Goldman Sachs |
| H1 or 1H | First half of the fiscal year, ending June 30 |
| H2 or 2H | Second half of the fiscal year, ending December 31 |
| Incentives | CTP, Coupon Program, May 1 Program, and MSRP Reductions |
| Individual Defendants | Carlos Tavares and Natalie Knight |
| Investor Day | June 13, 2024, calls and presentations from Stellantis's annual investor day |
| Knight | Individual Defendant Natalie Knight |
| May 1 Program | Dealer incentive program launched by Stellantis on May 1, 2024 |
| MSRP | Manufacturer's suggested retail price |
| MSRP Reductions | MSRP reductions referenced at ¶¶103–109 |
| MTD or Brief | Memorandum of Law in Support of Defendants' Motion to Dismiss the Amended Complaint (ECF 57) |
| MTS | Lead Plaintiff's Memorandum of Law in Support of Their Motion to Strike Exhibits to Defendants' Motion to Dismiss (ECF 62) |
| MTS Opp. or MTS Opposition | Defendants' Memorandum of Law in Opposition to Lead Plaintiff's Motion to Strike Exhibits to Defendants' Motion to Dismiss, filed concurrently herewith |
| NA | North America |

| Term | Definition |
|------|-----------|
| NDC | Stellantis's National Dealer Council |
| NDC Letter | September 10, 2024, letter from Stellantis National Dealer Council to Tavares |
| NOSA | Plaintiff's Notice of Supplemental Authority (ECF 67) |
| NYSE | New York Stock Exchange |
| OEM(s) | Original equipment manufacturer(s) |
| Opp. or Opposition | Lead Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss the Amended Complaint (ECF 60) |
| Plaintiff | Lead Plaintiff Boston Retirement System |
| PSLRA | Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4 *et seq.* |
| Q1 | First quarter of the year, ending March 31 |
| Q3 | Third quarter of the year, ending September 30 |
| Section 10(b) | Section 10(b) of the Securities Exchange Act |
| Section 20(a) | Section 20(a) of the Securities Exchange Act |
| Stellantis | Stellantis N.V. a holding company organized under Netherlands law |
| Stellantis Group | The consolidated subsidiaries of Stellantis engaged in (among other things) the design, engineering, manufacture, and distribution of vehicles and components worldwide. worldwide.  The Stellantis Group includes FCA US LLC, Stellantis's primary operating entity in North America, which performed the U.S. operational activities referenced in the AC. |
| STLA and STLAM | Stock ticker symbols for Stellantis |
| Tavares | Individual Defendant Carlos Tavares |
| US | United States |
| *WSJ* | *Wall Street Journal* |

### PRELIMINARY STATEMENT

This Court should deny Lead Plaintiff's Motion to Strike Exhibits to Defendants' Motion to Dismiss (the "Motion to Strike" or "Motion").  First, Defendants did not waive their right to request judicial notice, as courts in this Circuit do not require Defendants to file a motion to strike prior to submitting a motion to dismiss.  Second, the Court can and should consider documents incorporated by reference or that are properly subject to judicial notice.  As all contested documents fall into one or both of these categories, Plaintiff's Motion to Strike should be denied.

### LEGAL STANDARD

It is well-established that, on a motion to dismiss, courts may consider materials beyond the complaint itself, including documents incorporated into the complaint by reference or integral thereto, documents subject to judicial notice under Fed. R. Evid. 201(b), and judicially noticeable facts under Fed. R. Evid. 201(b).  Courts applying these principles have considered a wide variety of documents in resolving motions to dismiss securities law claims like this, including SEC filings, *Damri v. LivePerson, Inc.*, 772 F.Supp.3d 430, 440 n.2 (S.D.N.Y. 2025), earnings call transcripts, *id.*, press releases, *Lipow v. Net1 UEPS Techs., Inc.*, 131 F.Supp.3d 144, 158 (S.D.N.Y. 2015), analyst reports, *In re FuBo TV Inc. Sec. Litig.*, 2024 WL 1330001, at *4 (S.D.N.Y. Mar. 28, 2024), issuer website postings, *Porwal v. Ballard Power Sys., Inc.*, 2019 WL 1510707, at *2 n.3 (S.D.N.Y. Mar. 21, 2019), media reports, *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425–26 (2d Cir. 2008), and other public documents, *Long Miao v. Fanhua, Inc.*, 442 F.Supp.3d 774, 781 n.2 (S.D.N.Y. 2020).

Under these well-accepted standards, the exhibits Defendants submitted with their Motion to Dismiss are properly before the Court and should be considered.

## ARGUMENT

**I.    DEFENDANTS DID NOT WAIVE THEIR RIGHT TO REQUEST JUDICIAL NOTICE**

Plaintiff argues that the Court should not consider *any* of the exhibits submitted in support of Defendants' Motion to Dismiss—including documents reflecting the very statements Plaintiff alleges are actionable under §10(b)—because Defendants did not first file a motion for judicial notice (MTS 1) and instead made their request in a footnote to their Opening Brief.  Plaintiff is mistaken.

Rule 201(d) of the Federal Rules of Evidence permits courts to take judicial notice "at any stage of the proceeding," and neither it nor the rules or practices of this Court require the sort of procedures Plaintiff envisions.  To the contrary, courts in this Circuit routinely take judicial notice regardless of whether a defendant makes their request in a footnote, or even when they make no request at all.  *See, e.g.*, *Gray v. Wesco Aircraft Holdings, Inc.*, 454 F.Supp.3d 366, 382–84 (S.D.N.Y. 2020) (taking judicial notice of documents despite plaintiff's argument that defendant's request was "insufficient and waived" because it was raised in a footnote); *Lanigan Grp. v. Li-Cycle Holdings Corp.*, 2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023) (taking judicial notice of SEC filings and short seller report pursuant to request made in opening brief footnote (ECF 38)); *Kou v. Medis Tech., Ltd.*, 07-cv-3230, ECF 21 (S.D.N.Y. February 5, 2008) ("no need" to file a motion to strike as those issues "will be addressed when the motion to dismiss is addressed").  Plaintiff cites no contrary authority, relying instead on one decision regarding preservation of issues for appellate review (an entirely different issue)[1] and a handful of district court cases from other

---

[1] MTS 5 (citing *Luv N' Care, Ltd. v. Goldberg Cohen, LLP*, 703 F.App'x 26, 29 (2d Cir. 2017)).

2

circuits[2] (which are not binding).  Plaintiff's waiver argument should therefore be rejected.[3]

## II.     THE COURT SHOULD CONSIDER THE DOCUMENTS DEFENDANTS SUBMITTED IN RESOLVING DEFENDANTS' MOTION TO DISMISS

When deciding a motion under Fed. R. Civ. Proc. 12(b)(6), a court may properly consider materials that are either subject to judicial notice under Fed. R. Evid. 201 or incorporated by reference in the complaint.  *See Malin v. XL Cap. Ltd.*, 499 F. Supp. 2d 117, 129 (D. Conn. 2007); Fed. R. Evid. 201.  Given that all materials challenged by Plaintiff's Motion to Strike fall within one or both of these categories, Defendants may properly rely on them in their Motion to Dismiss, and Plaintiff's Motion should be denied in its entirety.

### A.     The Court May Consider Analyst Reports Outside the Complaint

Plaintiff contends that the analyst reports cited in the Complaint should be excluded because they are only "briefly referenced."  (MTS 12.)   Plaintiff's gloss both misstates the law and misreads how its Complaint uses those reports. [4]

That the Complaint undisputedly references and relies on the analyst reports confirms their proper consideration by the Court.  *See Cohen v. Cap. One Funding, LLC*, 489 F.Supp.3d 33, 44 (E.D.N.Y. 2020) ("Where the complaint cites or quotes excerpts of a document, the court may consider other parts of the same document submitted by the parties on a motion to dismiss."); *accord Kramer v. Time Warner Inc.*, 937 F.2d 767, 775 (2d Cir.1991).

That Plaintiff uses the analyst reports to establish market reaction to the Statements

---

[2] *See* MTS 5.

[3] Even if the procedure in this Court were otherwise, and it is not, Plaintiff's argument has no application to any document incorporated by reference into the AC or integral thereto, as those rules are self-executing and require no request to the Court in any form.  *See* Fed. R. Evid. 201(c)(1) ("The court... may take judicial notice on its own"); *see also Harborview Master Fund, LP v. Lightpath Techs., Inc.*, 601 F.Supp.2d 537, 542 (S.D.N.Y. 2009) ("For purposes of a Rule 12(b)(6) motion, the complaint is deemed to include any written instrument attached to it... incorporated [] by reference, and any other document that is integral to the allegations.").

[4] For example, the Complaint includes large block quotations from the July 29, 2024 Wells Fargo report (¶138 (Ex.72)).

3

confirms that *all* of the analyst report exhibits—cited in the Complaint or not—are properly considered too.  The Complaint is larded with references to how "[t]he market was assuaged by Defendants' representations" (¶4 (referencing analyst reaction); *see also* ¶¶50, 124, 195), and how analysts "reacted negatively" (¶¶122, 195) or were surprised or alarmed (¶¶127, 200).  At the outset, it is not proper for Plaintiff to characterize the analysts' mental states, which is not a "fact" stated in any report.  But having relied on analysts to plead market reaction, Defendants are entitled to submit similar analyst reports, not for their truth, but for the fact of their publication—*i.e.*, to establish what information was in the public domain and thus available to investors—whether referenced in the complaint or not.[5]  *See, e.g.*, *Colbert v. Rio Tinto PLC*, 824 Fed. Appx. 5, 10 n.5 (2d Cir. 2020) (taking judicial notice of analyst report for the fact of its publication, not for the truth of its contents); *FuBo TV*, 2024 WL 1330001, at *4 (same); *See Ark. Pub. Emps. Ret. Sys. v. Bristol-Myers Squibb*, 28 F.4th 343, 352 (2d Cir. 2022) (affirming dismissal where court took judicial notice of defendants' analyst reports that were directly relevant to plaintiffs' arguments supported by alternative reports on identical issues).

Plaintiff claims this established principle has no application here, arguing that Defendants are trying to use these reports for the "improper purpose[]" of proving their truth of their contents (MTS 8) or to establish "alternative" facts.  (*See id*. at 1.)  Not so.  Defendants tendered these exhibits to show the Court what information was publicly available, which bears directly upon Plaintiff's claim that Defendants misled the market by omission.  For example:[6]

---

[5] Plaintiff's Motion to Strike likewise claims that certain of these documents—Exhibits 43, 48, 51–52, 55, 60–62, 64, 68–70, and 77–78—are not properly subject to judicial notice because they are not cited or referenced in the Complaint. (*See* MTS 8–12.)  This is not the standard for judicial notice.  *See Hartford Fin. Serv. Grp., Inc.*, 547 F.3d at 424–26 (taking judicial notice of documents "far outside the Complaint"); *see also Lipow*, 131 F.Supp.3d 144, 158 (S.D.N.Y. 2015) (taking judicial notice of research report and press release not referenced or relied upon in complaint).

[6] Plaintiff's reliance on *In re Tommy Hilfiger, Sec. Litig.*, is misplaced.  (*See* MTS 4, 6.)  There, the court rejected documents offered merely to show the fact of their publication, which the court determined was irrelevant and, on that

- **Exhibit 39** and **Exhibit 40** are analyst commentaries on "Dare Forward 2030" as "unprecedented and [d]aring"—just as its name implies. Analysts' expressed views (whether genuinely held or not) are relevant to whether the market perceived the goals of Dare Forward as something Stellantis "promised" to reach (AC 8), as opposed to a "dare" or ambition.

- **Exhibit 41** is a February 23, 2023 analyst report from Societe Generale. It was widely reported that Tavares had a reputation as the best executive in the automotive industry; had a talent for staying disciplined on costs and was credited with restoring profitability at Peugeot and Opel Vauxhall. (*See* Ex.41). This is relevant to Court's analysis of whether intent to defraud is the "most compelling" inference here. (*See* Reply 28).

- **Exhibit 42** and **Exhibit 44** are analyst reports from May 3, 2023 and October 31, 2023 that note analysts' concerns about Stellantis's inventory levels in the lead up to and at the start of the CP. This is relevant to what information investors had about the Company's inventory levels and the purported reassurances by Defendants (¶¶34–35, 39–41).

- **Exhibit 43** is an August 25, 2023 Morningstar report that referenced a looming autoworker strike. Exhibit 22 is a July 26, 2023 earnings call transcript during which the Company disclosed that it was building up inventory in anticipation of production disruptions that the strike would cause. The fact of the strike is judicially noticeable under Fed. R. Evid. 201 and is not disputed by the Plaintiff. This information was part of the public record with regard to STLA's operations[7] and was part of the total mix of information available to investors. Indeed, the very analyst reports Plaintiff cites in the AC discuss the strike (Ex.46, Ex.47, Ex.53, Ex.54), as well as the resulting inventory buildup (Ex.79). The Motion to Strike claims that, instead, these exhibits contradict Plaintiff's claim that the inventory buildup was due to channel stuffing. (*See* MTS 9). But the Complaint alleges that the channel stuffing occurred during the CP, not before. (*See* ¶267), which post-dated the strike.[8]

- **Exhibit 48** is a January 24, 2024 analyst report that uses public data from *Motor*

---

basis, granted the motion to strike. 2007 WL 5581705, at *5 (S.D.N.Y. July 20, 2007). None of what Defendants offer here is irrelevant to the issues to be resolved on the Motion to Dismiss.

[7] Regardless, there is no dispute that the autoworkers voted to strike and that the strike took place shortly after the Morningstar Report was issued, both of which are facts subject to judicial notice. *See Levine v. City of New York*, 2002 WL 5588, at *1 n.1 (S.D.N.Y. Jan. 2, 2002) (permitting notice of "adjudicative facts generally known within the territorial jurisdiction of this Court, including facts pertaining to current events, politics, and similar facts.") (internal quotation omitted). The Complaint even makes indirect reference to the strike through its reference to the September 10, 2024 Dealer Council Letter, which mentions "[i]nvestor lawsuits, supplier lawsuits, strikes" as issues Stellantis was addressing at the time. (¶¶141, 216.)

[8] *See* Reuters, *UAW reaches deal with GM, ends coordinated strikes against Detroit automakers*, Oct. 30, 2023, https://www.reuters.com/business/autos-transportation/uaw-reaches-deal-with-gm-ends-coordinated-strikes-against-detroit-automakers-2023-10-30.

*Intelligence* and elsewhere to discuss incentive spend in comparison to the industry and asserts that Stellantis had "higher incentives than its closest peers in the US." This document is introduced to show that information about Stellantis's actual use of incentives was publicly available, which Plaintiff disputes, not for its truth. (Opp. 21.) Nor is this report rendered "highly misleading" by subsequent disclosures months later that Stellantis's *net* incentives had decreased, but say nothing about how that compares to the industry.

- **Exhibit 64** is a June 7, 2024 analyst report that, similar to **Exhibit 48**, uses public data from *Motor Intelligence* and elsewhere to discuss incentive spend in comparison to the industry and asserts that Stellantis's "US incentives now in line" with "peers." This document is introduced to show that information about Stellantis's actual use of incentives was publicly available, which Plaintiff disputes, not for its truth. (Opp. 21.)

- **Exhibit 68** and **Exhibit 70** are analyst reports from June 17, 2024 that discuss a number of incentive programs directly at issue in the AC, including the reduction in MSRP (¶¶103–109) and the May 1 Program (¶¶110–120). Exhibit 70 also discusses the Company's "High US Inventory." These reports were not introduced for the truth of what was said in the reports, but the fact that this was part of the total mix of information available to investors. Plaintiff repeatedly argues that the market was "assuaged" by Defendants' disclosures (¶¶4, 50, 124, 195), but he is not entitled to cherry pick what analyst reports can properly be considered part of the "market."

- **Exhibit 69** is likewise a June 17, 2024 analyst report disclosing Company figures on inventory and days' supply, as well as discussing the need to reduce US inventory. As before, this report was not introduced for its truth, but the fact of the disclosure of this information.

- **Exhibit 51** and **Exhibit 52** are analyst reports from February 15, 2024 and February 16, 2024 that were part of the total mix of information available to investors regarding the Company's headwinds. Plaintiff cannot cherry pick what reports may be considered in establishing how the 'market' reacted and whether the market was "assuaged," *see supra*. Nor does Plaintiff offer any evidence that Exhibit 51's mention of "pricing normalization" substantiate his allegation of "channel stuffing" by Defendants. (MTS 10.)

- **Exhibit 60** and **Exhibit 61** and **Exhibit 62** are analyst reports from April 30, 2024, May 1, 2024, and May 2, 2024 that exhibit analysts' concerns to 24Q1 earnings and the expected decline in AOI margin. These documents are relevant because the AC claims that analysts were "partially assuaged" by Stellantis's 24Q1 representations. (¶195.)

- **Exhibit 77** and **Exhibit 78** are analyst reports from September 10, 2024 and September 30, 2024 demonstrating that the market anticipated that the double-digit target was ambitious in light of Company-specific and industry-wide challenges. These documents are relevant to the market's expectations and what information was available to investors.[9]

Cited to establish the undisputed public record, these exhibits bear directly on the plausibility of Plaintiff's allegations and the sufficiency of the Complaint and are properly before this Court. *See Bristol-Myers Squibb*, 28 F.4th at 352.

As to Plaintiff's argument that Defendants cite Exhibits 43, 60–62, and 69–70 to "contradict" the Complaint's allegations, particularly Plaintiff's contention that the Company's disclosures "assuaged" analysts, (MTS 9–15), Plaintiff is incorrect.[10]  These exhibits were submitted for the purpose of showing what the market knew based on the information relayed in analyst reports, including information about pricing, incentives, and inventories, all of which is directly relevant to the plausibility of Plaintiff's claims that the market was misled.[11]

### B.    SEC Filings, Call transcripts, and Presentations Are Subject to Both Judicial Notice and Incorporation By Reference

Plaintiff contends that Exhibits 16, 17, 21, 22, and 92, Stellantis presentations, earnings call transcripts, and SEC filings, should be stricken because they are either not referenced in the Complaint (MTS 15) or again because they are merely "briefly referenced" (*id.* at 12–13).  But

---

[9] The Motion contains no specific objections to Exhibits 77 or 78.  As such, both are properly subject to judicial notice.

[10] At the outset, it is not proper for Plaintiff to characterize the analysts' mental states, which is not a "fact" stated in any report.  (*See* Exs. 52, 55, 60–62, 68–70.)

[11] Defendants note the procedural impropriety of Plaintiff's Motion to Strike.  However, it is improper to argue the merits of the issues in the Motion to Dismiss briefing, as Plaintiff does here, at this stage, such as the extent to which the market was aware of the financial hurdles facing the Company during the CP.  All of this constitutes an attempt to achieve an end-run around length limits for motions set by this Court. *See, e.g.*, *Sierra v. U.S.*, 1998 WL 599715, at *9 (S.D.N.Y. Sept. 10, 1998) (holding that "a motion to strike… is not a proper way to challenge a motion to dismiss"); *see also IHS Dialysis Inc. v. Davita, Inc.*, 2013 WL 1309737, at *3 (S.D.N.Y. Mar. 31, 2013) (denying motion to strike where "Defendant was not granted leave to file" and "it appear[ed] from the content of Defendant's papers" that the motion to strike "is simply an attempt to assert additional arguments in support of [their motion to dismiss] and to evade the page limits for motions").

Plaintiff cannot seriously dispute this Court's ability to take judicial notice of SEC filings and other Stellantis statements to consider what the Company disclosed. *E.g.*, *Damri*, 772 F.Supp.3d at 440 n.2 (S.D.N.Y. 2025) (judicially noticing SEC filings and earnings call transcripts); *Porwal*, 2019 WL 1510707, at *2 n.3 (S.D.N.Y. Mar. 21, 2019) (judicially noticing information displayed on a party's website); *Kramer*, 937 F.2d at 774. Nor can Plaintiff escape the full contents of the disclosures on which it cites in the Complaint. (*Supra* II.A.)[12] Indeed, Plaintiff's authority (*see* MTS 7, 13) permitted consideration of transcripts and presentations "to show what was said to investors." *See Gagnon v. Alkermes PLC*, 368 F.Supp.3d 750, 764 (S.D.N.Y. 2019).[13] These exhibits should accordingly be considered for the entirety of their contents.

> **C.      News Articles and Industry Data Sources Are Subject to Judicial Notice**

Plaintiff argues that Exhibits 81–85, 87–90, 95–96, 99–101, and 105–115 are improperly offered for their truth to support Defendants' "counterfactual argument" that factors *other* than channel stuffing "were responsible for the deterioration of Stellantis's financial health and prospects." (*See* MTS 16–22.) That is not correct. Each of these exhibits was submitted for the purposes of showing what information was available to the market, which is permissible (*supra* II.A.), or to establish judicially noticeable facts in accordance with Fed. R. Evid. 201(b).[14]

---

[12] Exhibits 16 and 17 are both referenced in the Complaint in its discussion of the March 1, 2022 call involving Tavares. (¶25.)

[13] Unlike the defendants in *SEC v. Medallion Financial Corp.*, (*see* MTD 12–13), who "offer[ed] no legal authority for their submission," 2022 WL 3043224, at *2 (S.D.N.Y. Aug. 2, 2022), Defendants' submission of these exhibits is grounded in the well-established doctrines of incorporation by reference and judicial notice. (*See supra* Legal Standard).

[14] Plaintiff's cases (MTS 16–17) are thus inapposite. Defendants are not submitting these exhibits to improperly "refute" factual claims, as was the concern in *Hills v. BioXcel Therapeutics, Inc.*, 2024 WL 3374145, at *5 (D. Conn. July 11, 2024). They are not submitting "irrelevant" documents, like the post-event articles rejected in *Torain v. Clear Channel Broad., Inc.*, 651 F.Supp.2d 125, 142 (S.D.N.Y. 2009). The documents do not reflect facts, like rising cost increases affecting a particular industry at issue in *City of Austin Police Ret. Sys. v. Kinross Gold Corp.*, 957 F.Supp.2d 277, 288 (S.D.N.Y. 2013), of which an average investor would not "be aware." There is also no "law of the case" for this Court to defer to on this issue, as was true in *Kasilingam v. Tilray, Inc.*, 2024 WL 4350118, at *2 (S.D.N.Y. Sept. 30, 2024)). Nor, finally, do these exhibits go "far beyond the scope of Rule 201," as was the issue in *In re Pfizer Inc.*

- **Industry and Stellantis Incentives.** Plaintiff argues that Stellantis's disclosures on its incentives did not cure any omission because its risk factors merely stated that the Company "may" use incentives and did not detail the types of incentives it deployed. (*See* Opp 21.) However, information about the types of incentives at issue was publicly available through various public sources including through articles, dealer advertisements and other public sources. *See* Ex.81 (incentives based on orders); Exs.84–85 (courtesy program elements, requirements and benefits)); information regarding Stellantis's use of these and other types of incentives was also publicly available. (Ex.88 (explaining Stellantis's CTP program); Ex.90 (NDC chair disclosing that Company is "adding incentives"); Ex.96 (Stellantis representative discussing new summer cash bonus program); Ex.105 (discussing incentives Stellantis added in 2024); [15] Ex.106 (Stellantis incentive spend data).

- **Management Reputation.** Exhibits 82 and 100 reflect the fact that Tavares had a reputation for operational excellence as an automotive CEO and a track record for having returned Peugeot and Opel Vauxhall to profitability. (Exs.82, 100). His reputation is relevant to scienter.

- **AOI Margins.** Exhibit 87 is a *Wall Street Journal* article reporting on Stellantis's 2022 financial performance compared to peers, at a time when no channel stuffing is alleged to have occurred. It is cited for the fact of publication, not its truth.

- **Operational Metrics.** Exhibits 85, 95, 99 and 101 all show Stellantis's average transaction prices available through the *Kelley Blue Book*. This information does not contradict anything in the AC and is submitted to show that information regarding Stellantis's pricing was publicly available. Similarly, Exhibits 83 and 89 contain public information regarding Stellantis's days' supply. This too does not contradict anything in the AC and is submitted to show that information regarding the movement of inventory was publicly available beyond what Stellantis itself shared.

- **Dealer Announcement.** Exhibit 112 is a Stellantis dealer announcement regarding dealers' ability to sell inventory at the price of their choosing. Plaintiff does not dispute this point. (MTS 22.)

- **Macroeconomic Factors.** The Court may take judicial notice of the facts regarding gas prices (Ex.111); new car loan costs (Ex.113 ); the Fed rate (Ex.114); and consumer sentiment (Ex.115) under Fed. R. Evid. 201. The Court may also take judicial notice of the fact that Stellantis's competitors suffered setbacks and issued

---

*Sec. Litig.*, 584 F.Supp.2d 621, 634 (S.D.N.Y. 2008), *abrogated by Dekalb Cnty. Pension Fund v. Transocean Ltd.*, 817 F.3d 393 (2d Cir. 2016).

[15] Here (MTS 21) and in other places (MTS 10, 18, 19), Plaintiff improperly delves into the merits, which should have been addressed in the Opposition. (MTS 21.)

9

profit warnings around the same time that Stellantis did, citing these macroeconomic headwinds. (Exs.107–109.) These exhibits are properly subject to Fed. R. Evid. 201, and are relevant because investors understood that the auto industry faced a number of headwinds.

### D.    The Court May Consider The Remaining Documents

Finally, the Court should reject Plaintiff's argument that the remaining seven documents should be disregarded because they were not expressly referenced in Defendants' Opening Brief. (MTS 22.)[16]  Defendants submitted these documents as part of a package of exhibits in an effort not to burden the Court with multiple declarations.  All of these documents (save one) are referenced in the AC and the one exception (Ex.93) is withdrawn.[17]  Four of the remaining five documents are analyst reports that the AC selectively quotes for the purposes of establishing that analysts reacted negatively to the disclosures on April 30 (¶122) and July 25 (¶134) but were nevertheless "assuaged" (¶124) or reassured" (¶138) by the Company.  For the reasons stated above, those reports may be considered.  (*Supra* II.A.)[18]  The last document comprises Stellantis's report for 1H24 filed with the SEC (Ex.36), which is referenced at ¶130 and presented during the July 25 Earnings Call (Ex.34), and reflects the Company's shipments for that period and inventories as of the period's close.  *See Dixon v. NBCUniversal Media, LLC*, 947 F.Supp.2d 390, 396 (S.D.N.Y. 2013) (declining to strike exhibit submitted for first time with reply brief because opposing party would suffer no prejudice).

### CONCLUSION

For the reasons set forth herein, Defendants respectfully request that the Court deny Plaintiff's Motion to Strike in its entirety.

---

[16] Citing Exhibits 36, 57, 63, 71–72, 93, and 103.

[17] The sole exception is Exhibit 93, which was included in error and which Defendants withdraw.

[18] Exhibit 71 is cited in the Reply, but not for the truth of the matters asserted.  (*See* Reply 21.)

Dated:  New York, New York
        October 27, 2025

                            Respectfully submitted,


                            */s/ Mary Eaton*
                            Mary Eaton
                            Meredith Kotler
                            FRESHFIELDS US LLP
                            3 World Trade Center
                            175 Greenwich St., 51st Fl.
                            New York, New York 10007
                            Telephone: (212) 277-4000
                            mary.eaton@freshfields.com
                            meredith.kotler@freshfields.com


                            *Attorneys for Defendants*

11

## <u>CERTIFICATE OF COMPLIANCE WITH WORD COUNT</u>

I, Mary J. Eaton, an attorney duly admitted to practice before this Court, hereby certifies pursuant to Rule 5(B) of the Honorable Jennifer H. Rearden's Individual Rules and Practices in Civil Cases, and Rule 7.1(c) of the Local Rules of the United States District Courts for the Southern and Eastern Districts of New York, that the foregoing Memorandum of Law contains 3,990 words in accordance with the Joint Stipulation and Amended Scheduling Order so-ordered by the Honorable Gary Stein in the above-captioned action on June 26, 2025 Order (ECF. 53).  In making this calculation, I have relied on the word count of the word-processing program used to prepare this Memorandum.

Dated:   October 27       , 2025               */s/ Mary Eaton*
       New York, New York              Mary Eaton