**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

STEVEN LONG, Individually and on Behalf
of All Others Similarly Situated,

Plaintiff,

v.

STELLANTIS N.V., CARLOS TAVARES,
and NATALIE M. KNIGHT,

Defendants.

Case No. 1:24-cv-06196-VEC-GS

ORAL ARGUMENT REQUESTED

**LEAD PLAINTIFF'S REPLY MEMORANDUM OF LAW**
**IN FURTHER SUPPORT OF ITS MOTION TO STRIKE**
**EXHIBITS TO DEFENDANTS' MOTION TO DISMISS**

**TABLE OF CONTENTS**

**Page**

INTRODUCTION ......................................................................................................... 1

ARGUMENT ............................................................................................................... 2

    I.     Defendants' Footnote Suggestion Does Not Establish That The Judicial Notice Or Incorporation By Reference Doctrines Apply ...................................... 2

    II.    Defendants' Belated Attempts To Justify Judicial Notice Fail ............................... 4

         A.     The Court Should Decline To Consider Defendants' Analyst Reports ......................................................................................................... 4

         B.     Defendants' SEC Filings, Transcripts, And Presentations Should Not Be Judicially Noticed For Their Contested Facts ............................... 9

         C.     Defendants' News Articles, Websites, And Industry Data Sources Are Not Subject To Judicial Notice ........................................................... 10

         D.     Defendants' Uncited Exhibits Should Not Be Noticed ............................ 11

CONCLUSION ............................................................................................................ 11

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re 2007 Novastar Fin. Sec. Litig.*,
2008 WL 2354367 (W.D. Mo. June 4, 2008), *aff'd*, 579 F.3d 878 (8th Cir. 2009) ............7, 10

*In re Apple Inc. Sec. Litig.*,
678 F. Supp. 3d 1147 (N.D. Cal. 2023) ...................................................6

*In re Bristol-Myers Squibb Sec. Litig.*,
28 F.4th 343 (2d Cir. 2022) ...................................................6

*Colbert v. Rio Tinto PLC*,
392 F. Supp. 3d 329 (S.D.N.Y. 2019), *aff'd,* 824 F. App'x 5 (2nd Cir. 2020).........................6

*In re Energy Recovery Inc. Sec. Litig.*,
2016 WL 324150 (N.D. Cal. Jan. 27, 2016) .................................8

*In re FuboTV Inc. Sec. Litig.*,
2024 WL 1330001 (S.D.N.Y. Mar. 28, 2024) .................................6

*Gray v. Wesco Aircraft Holdings, Inc.*,
454 F. Supp. 3d 366 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2nd Cir. 2021).......................4

*Green v. City & Cnty. of San Francisco*,
2021 WL 3810243 (N.D. Cal. Aug. 26, 2021),
*aff'd*, 2023 WL 7211421 (9th Cir. Nov. 2, 2023) ...................................11

*In re Green Dot Corp. Sec. Litig.*,
2024 WL 1356253 (C.D. Cal. Mar. 29, 2024).................................2, 3

*Hanner v. Westchester Cnty.*,
2019 WL 1299462 (S.D.N.Y. Mar. 21, 2019) ...................................1

*Hills v. BioXcel Therapeutics, Inc.*,
2025 WL 2777129 (D. Conn. Sept. 29, 2025).................................6

*Iron Workers Loc. 580 Joint Funds v. Nvidia Corp.*,
2020 WL 1244936 (N.D. Cal. Mar. 16, 2020).................................4

*Kou v. Medis Tech., Ltd.*,
07-cv-3230 (S.D.N.Y. Feb. 5, 2008).................................4

*Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*,
2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023).................................4

*Lee v. Springer Nature Am., Inc.*,
769 F. Supp. 3d 234 (S.D.N.Y. 2025)..................................................................................10

*In re: Lisse*,
905 F.3d 495 (7th Cir. 2018) ................................................................................................2

*In re MF Glob. Holdings Ltd. Sec. Litig.*,
982 F. Supp. 2d 277 (S.D.N.Y. 2013)...................................................................................1

*In re Obalon Therapeutics, Inc.*,
2019 WL 4729461 (S.D. Cal. Sept. 25, 2019) ......................................................................5

*Pitman v. Immunovant, Inc.*,
2024 WL 964258 (E.D.N.Y. Feb. 25, 2024),
*rpt. & recommendation adopted*, 2024 WL 1342737 (E.D.N.Y. Mar. 29, 2024) .................5, 7

*In re Pivotal Sec. Litig.*,
2020 WL 4193384 (N.D. Cal. July 21, 2020)........................................................................5

*In re PTC Therapeutics, Inc. Sec. Litig.*,
2017 WL 3705801 (D.N.J. Aug. 28, 2017) ........................................................................6, 9

*Ray v. Balestriere Fariello LLP*,
2019 WL 5212359 (S.D.N.Y. Oct. 16, 2019) ........................................................................4

*Roth v. Jennings*,
489 F.3d 499 (2d Cir. 2007)..................................................................................................9

*S.E.C. v. Medallion Fin. Corp.*,
2022 WL 3043224 (S.D.N.Y. Aug. 2, 2022)...............................................................3, 4, 9

*Shallenburg v. PNC Bank, N.A.*,
2020 WL 555447 (M.D. Fla. Feb. 4, 2020) ..........................................................................1

*Sw. Carpenters Pension Tr. v. Merge Techs., Inc.*,
2008 WL 11381377 (E.D. Wis. Mar. 31, 2008) ...................................................................8

*In re Tommy Hilfiger, Sec. Litig.*,
2007 WL 5581705 (S.D.N.Y. July 20, 2007) .......................................................................1

**STATUTES AND RULES**

Fed. R. Evid. 201 ...............................................................................................................1, 10

Fed. R. Evid. 201(b)(2) .............................................................................................................7

Fed. R. Evid. 201(c)..................................................................................................................2

Fed. R. Evid. 201(c)(1) .............................................................................................................3

Fed. R. Evid. 201(c)(2) ...........................................................................................................1

Fed. R. Evid. 201(e)..............................................................................................................2

**OTHER AUTHORITIES**

21B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 5106.2 (2d ed. 2022)....................3

21B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 5108 (2d ed. 2022) ......................3

**INTRODUCTION[1]**

In a footnote to their motion to dismiss brief, Defendants suggested that the Court *could* consider their 115 exhibits, instead of making the request for judicial notice or incorporation by reference required by Federal Rule of Evidence ("FRE") 201(c)(2). Despite having the burden of proof, Defendants made no particularized argument supporting judicial notice or incorporation by reference. *See* FRE 201(c)(2) ("the court must take notice if a party ***requests it and*** the court is ***supplied with the necessary information***."). Under such circumstances, courts deny notice. *See, e.g.*, *Hanner v. Westchester Cnty.*, 2019 WL 1299462, at *4 (S.D.N.Y. Mar. 21, 2019) (denying judicial notice where party failed to "provide any reasoning" as to why notice was appropriate); *Shallenburg v. PNC Bank, N.A.*, 2020 WL 555447, at *12 (M.D. Fla. Feb. 4, 2020) (declining to notice documents referenced in a footnote that "recite[d] caselaw regarding a court's ability to consider certain documents" and "lack[ed] any supporting argument").

Now, in opposition to Plaintiff's Motion to Strike, Defendants make a new request for judicial notice of their 115 exhibits. MtS.Opp.1. To the extent the Court considers this belated request, Defendants seek to establish disputed and irrelevant facts that are not appropriate for notice under FRE 201. *See, e.g.*, *In re Tommy Hilfiger, Sec. Litig.*, 2007 WL 5581705, at *5 (S.D.N.Y. July 20, 2007) (striking news articles regarding market reaction where only fact susceptible to judicial notice was "fact of [] publication alone," which was "irrelevant"); *see also In re MF Glob. Holdings Ltd. Sec. Litig.*, 982 F. Supp. 2d 277, 302 (S.D.N.Y. 2013) ("A court must accept as true all well-pleaded factual allegations in the complaint, and draw all reasonable inferences in the plaintiff's favor.").

---

[1] Capitalized terms undefined herein have the meanings ascribed in Plaintiff's Motion to Strike (ECF No. 62). "MtS.Opp." refers to Defendants' Opposition to Lead Plaintiff's Motion to Strike (ECF No. 70). All internal citations are omitted and emphasis is added unless otherwise noted.

For the reasons set forth in Plaintiff's opening brief and as discussed below, Defendants' request should be denied.

## ARGUMENT

Defendants had an opportunity to support judicial notice "[o]n timely request." FRE 201(e). That "timely request" should have been made when Defendants moved to dismiss. *See In re: Lisse*, 905 F.3d 495, 497 (7th Cir. 2018) (Easterbrook, J.) (denying request for judicial notice and explaining that if evidence is "not subject to reasonable dispute… [j]ust refer to the evidence in the brief and explain there why it is relevant and subject to judicial notice"). Having failed to "timely" request notice, Defendants' exhibits should be stricken. *See In re Green Dot Corp. Sec. Litig.*, 2024 WL 1356253, at *3 (C.D. Cal. Mar. 29, 2024) ("Nor will the court consider Defendants' belated and repeated efforts to introduce arguments regarding incorporation by reference for the first time in Defendants' Reply.").

Should the Court choose to consider Defendants' new and belated justifications, they fail.

## I.    Defendants' Footnote Suggestion Does Not Establish That The Judicial Notice Or Incorporation By Reference Doctrines Apply

Defendants first contend that courts "routinely take judicial notice regardless of whether a defendant makes their request in a footnote." MtS.Opp.2. However, Defendants' footnote is not a "request," and it does not "suppl[y the Court] with the necessary information" to determine whether notice is appropriate. *See* FRE 201(c). Rather, the footnote states: "The background set forth herein is drawn from the non-conclusory allegations of the AC, which are accepted as true solely for the purpose of this motion, and documents referenced therein or subject to judicial notice." MTD.3 n.3. By its plain language, Defendants' footnote is limited to exhibits cited in the

2

"Background" section of their brief,[2] MTD.3-20, and contains no language resembling a request in any event.

The footnote also does not supply any "necessary information." It does not even identify which documents are purportedly subject to which doctrines, let alone provide a justification for their application. *See* 21B WRIGHT & MILLER'S FEDERAL PRACTICE & PROCEDURE § 5108 (2d ed. 2022) (a party must "provide information from which the court can conclude" that the fact is one "whose accuracy cannot reasonably be questioned"); *id.* § 5106.2 ("[t]he burden of showing the accuracy lies on the proponent of notice."). At best, Defendants' footnote suggests that the Court *may* notice facts drawn from the proffered exhibits under FRE 201(c)(1), which the Court should decline. *See In re Green Dot Corp. Sec. Litig.*, 2024 WL 1356253, at *3 n.1 (declining to consider documents where Defendants failed to make any "substantive argument" or "identify any particular facts" subject to notice).

Defendants next assert that Plaintiff's motion has no application to any document referenced in the Complaint or "integral" thereto, as those rules are purportedly "self-executing." MtS.Opp.3 n.3. However, "defendants either misapprehend or deliberately misstate the standard by implying that any document quoted or referred to in the… [c]omplaint is incorporated by reference." *S.E.C. v. Medallion Fin. Corp.*, 2022 WL 3043224, at *1 (S.D.N.Y. Aug. 2, 2022) ("Incorporation requires a clear, definite, and substantial reference to the documents in the complaint.").

Tellingly, Defendants offer no authority where a court exercised its discretion to notice more than 100 exhibits without any substantive argument in support. Rather, Defendants'

---

[2] **Exhibits 8, 13, 20, 33, 36, 48, 57, 58, 63, 71, 72, 74, 75, 81, 84, 85, 88, 92, 96, 98, 102, 103, 105, and 106** are not referenced in Defendants' "Background" section.

authorities concern either a *handful* of exhibits or a request supported with *specific* justifications. *See* MtS.Opp.2-3. For instance, *Gray v. Wesco Aircraft Holdings, Inc.*, concerned a request for judicial notice of just six exhibits. 454 F. Supp. 3d 366, 383–84 (S.D.N.Y. 2020), *aff'd*, 847 F. App'x 35 (2nd Cir. 2021). In *Lanigan Grp., Inc. v. Li-Cycle Holdings Corp.*, 22-CV-02222, 2023 WL 6541884 (E.D.N.Y. Oct. 6, 2023), unlike here, the party requesting notice of four exhibits supported that request with individualized justifications. *Id.*, ECF No. 38 at 8 n.9 ("The [document] is quoted extensively…, is integral to [the complaint's] allegations, and may be considered on this motion."). In *Kou v. Medis Tech., Ltd.,* 07-cv-3230 (S.D.N.Y. Feb. 5, 2008), defendants provided justifications for the five S.E.C. filings, two news articles, and one public report for which they sought notice. *Id.*, ECF No. 14 at 4 n.3; ECF No. 21 at 2-3. Defendants' citations do not apply to the 115 exhibits at issue here.

## II.    Defendants' Belated Attempts To Justify Judicial Notice Fail

### A.    The Court Should Decline To Consider Defendants' Analyst Reports

Defendants wrongly assert that many of the analyst reports they submitted may be considered because they are cited in the Complaint. MtS.Opp.3-4. However, "[a] mere passing reference or even references… does not, on its own, incorporate the document into the complaint." *Medallion Fin. Corp.*, 2022 WL 3043224, at *1; *Ray v. Balestriere Fariello LLP*, 2019 WL 5212359, at *5 (S.D.N.Y. Oct. 16, 2019) ("[m]entioning a document in a complaint, and even offering limited quotations is not enough"); *Iron Workers Loc. 580 Joint Funds v. Nvidia Corp.*, 2020 WL 1244936, at *6 (N.D. Cal. Mar. 16, 2020) (denying notice of analyst report "cited extensively" in the complaint where "offer[ed] to contradict Plaintiffs' allegations").

By contrast, Defendants' authorities did not involve analyst reports but instead, concerned documents that were the foundation of a plaintiff's claims and were thus "integral" to the complaint. *See* MtS.Opp.3.

4

Defendants next contend that all their analyst reports, whether cited in the complaint or not, are noticeable because they are properly used to refute Plaintiff's characterization of "market reaction." MtS.Opp.3-4. This argument fails. Defendants cite the analyst reports for reasons *other* than evidence of "market reaction," including Exs. 43, 48, 64, 77, and 78, which they argue establish various facts about a "looming strike," levels of "incentive spend," and whether Stellantis's margin target was "ambitious in light of Company-specific and industry-wide challenges." MtS.Opp.5-7. While courts may generally notice analyst reports for the fact of their publication, courts decline to notice analyst reports advanced to establish market optimism, concern, or other disputed facts. *See Pitman v. Immunovant, Inc.*, 2024 WL 964258, at *1 n.3 (E.D.N.Y. Feb. 25, 2024) (denying notice of analyst reports used to show that "the reduction in albumin levels is not a major area of worry"); *In re Pivotal Sec. Litig.*, 2020 WL 4193384, at *5 (N.D. Cal. July 21, 2020) (declining to notice analyst report used "to demonstrate the positive analyst coverage").

Defendants' next ask the Court to notice facts drawn from analyst reports for a disputed truth, in contravention of the relevant pleading standards. *See supra* at 1-2; *In re Obalon Therapeutics, Inc.*, 2019 WL 4729461, at *4 (S.D. Cal. Sept. 25, 2019) (denying notice of analyst report where "[i]n essence, Defendants offer documents outside the four corners of the Complaint to argue disputed facts to demonstrate Defendants did not violate federal securities laws"). Judicial notice of analyst reports is improper here because "the inferences defendants wish to draw from

these [analyst reports] go beyond the mere existence of statements within them." *In re PTC Therapeutics, Inc. Sec. Litig.*, 2017 WL 3705801, at *3 n.5 (D.N.J. Aug. 28, 2017).[3]

Defendants' authorities are not to the contrary. *Rio Tinto* noticed an analyst report disclosing the very fact plaintiff alleged was concealed. 824 F. App'x 5, 10 n.5 (2d Cir. 2020). *FuBo* noticed analyst reports for the fact of their publication only. 2024 WL 1330001, at *4 (S.D.N.Y. Mar. 28, 2024). *Bristol-Myers Squibb* noticed analyst reports for the limited purpose of clarifying investors' understanding of a vague statement made by defendants. 28 F.4th 343, 352 (2d Cir. 2022).

Defendants' specific arguments also fail.

- Defendants cite **Exhibit 39 and Exhibit 40** for the purported market view that "Dare Forward 2030 objectives" were "unprecedented and [d]aring." MtS.Opp.5. However, as alleged (*e.g.*, ¶28), the specific Dare Forward 2030 targets at issue in this litigation—AOI margins—were not "unprecedented" or "daring." Indeed, analysts were "[o]n the flip side… ***confident on [Stellantis's] ability to meet its [Dare Forward 2030] AOI margin targets***" (Ex. 40 at 4), based on Defendant Tavares's representations that Stellantis was "***absolutely committed***" to delivering them and because Stellantis was *already* reporting double digit margins (Ex. 18 at 22). Defendants are not entitled to judicial notice of selectively quoted and disputed facts untethered from the extraneous evidence they submit.

- Defendants concede that **Exhibits 41, 82, and 100** were introduced as character evidence to undermine Plaintiff's scienter allegations. MtS.Opp.5, 9. Courts have rejected identical requests for notice of facts purportedly relevant to scienter. *See In re Apple Inc. Sec. Litig.*, 678 F. Supp. 3d 1147, 1153 (N.D. Cal. 2023) (denying notice of document advanced to "disprove[] [defendant's] intent to defraud shareholders" because it "appears to be another attempt to obtain notice of general and irrelevant character evidence.").

---

[3] Defendants separately claim that "it is not proper for Plaintiff to characterize the analysts' mental states, which is not a 'fact' stated in any report." MtS.Opp. at 4. The Complaint quotes certain analyst reports and, based on words used by the analysts themselves, provides a summary of their reaction to Defendants' statements, consistent with the inference to which Plaintiff is entitled on a pleading motion. This is entirely appropriate. *See, e.g.*, *Hills v. BioXcel Therapeutics, Inc.*, 2025 WL 2777129, at *4 (D. Conn. Sept. 29, 2025) (crediting allegations "describing reactions of different analysts" in sustaining complaint).

6

- **Exhibits 42 and 44** are analyst reports that Defendants contend are relevant to what information was publicly disclosed. However, Defendants improperly advance these reports to show analyst "concern" about rising inventories to suggest that the market was aware of the alleged fraud, which is improper under the judicial notice doctrine because such documents "cannot be considered for their truth at this juncture." *See Pitman*, 2024 WL 964258, at \*1 n.3.

- Defendants improperly use **Exhibit 43 and 87** to establish that Stellantis's inventory buildup was caused by a looming strike and that Stellantis's margins were high prior to the Class Period. MtS.Opp.5. These disputed facts contradict the well-pled allegations that Stellantis's inventory buildup and high margins were caused by Defendants' channel-stuffing scheme, even before the Class Period.[4] *See, e.g.*, ¶216; *In re 2007 Novastar Fin. Sec. Litig.*, 2008 WL 2354367, at \*1 (W.D. Mo. June 4, 2008) ("[T]he Court cannot take judicial notice of the ***impact*** of [] industry-wide reversals on the Company.").

- Defendants improperly use **Exhibits 48, 64, and 68** to show public awareness of Stellantis's use of incentives. However, the exhibits rely on unsourced third-party data that is not susceptible to notice as it cannot be "accurately and readily determined from sources" of unquestionable accuracy. FRE 201(b)(2). Further, none of these exhibits reveal that Stellantis was using incentives as part of its channel-stuffing scheme in order to inflate AOI margins, as alleged. ¶¶91-120.

- Defendants improperly introduce **Exhibits 69 and 70** to show analyst awareness of Stellantis's high U.S. inventories, which is a disputed fact. Further, these same analysts acknowledged Defendants' misleading reassurances about inventories, Ex. 69 at 1 ("management… is working on [inventories], with gradual improvements seen throughout the year"), and did so specifically given Defendants' misleading double-digit margin guidance reaffirmation. *Id.* at 2 ("[M]anagement confirmed its 2024 targets of a double-digit AOI margin…. Consensus [] is in line with guidance, expecting 10.5% in H1 and 11.4% in H2."); *see* ¶42. The fact that consensus estimates showed ***increasing*** margins confirms that investors were assuaged by Defendants' misrepresentations.

- Defendants improperly advance **Exhibits 60, 61, and 62** to show "analysts' concerns" from April 30 to May 2, 2024 and to argue that analysts were not assuaged by Defendants' false and misleading statements, which are disputed facts. MtS.Opp.6. If anything, these reports establish the opposite: analysts credited Defendants' representations that the second half of 2024 would "sav[e] the day,"

---

[4] In a footnote, Defendants request judicial notice of an autoworkers' strike. MtS.Opp.5 n.7. This request is untimely and should be denied. To the extent the Court considers the belated request, Plaintiff does not oppose notice of this fact, but does oppose the inference that the strike caused Stellantis's inventory crisis during the Class Period.

7

Ex. 60 at 1, viewed Defendants' guidance as conservative, Ex. 61 at 1, and reiterated "buy" ratings, Ex. 62 at 2.

- Defendants advance **Exhibits 51 and 52**, which are analyst reports from February 15 and 16, 2024, to show market awareness of the "headwinds" facing Stellantis, which included "pricing normalization." MtS.Opp.6. However, based on Defendants' statements on February 15, 2024, those same analysts understood that "pricing normalization" was factored into guidance, Ex. 51 at 1, and that "AOI in N. America… could be flat/up y/y," Ex. 52 at 1. Contrary to Defendants' improper attempt to assert a countervailing narrative of the market's view, these analysts confirm the core allegation that investors were "assuaged" about the status of Stellantis's U.S. operations by Defendants' pricing and margin sustainability misstatements. *See, e.g.*, ¶¶46-50.

- **Exhibit 71** is referenced for the first time in Defendants' reply in support of their motion to dismiss and advanced to show that on July 24, 2024, an analyst understood that Stellantis would control its inventory through "production cuts and pricing." But the same analyst acknowledged that Stellantis "maintained its [fiscal year] target for double digit profitability," the very statement and target that the Complaint alleges was misleading. Ex. 71 at 1. Defendants' request for notice is also untimely and should be denied. *Sw. Carpenters Pension Tr. v. Merge Techs., Inc.*, 2008 WL 11381377, at *5 (E.D. Wis. Mar. 31, 2008) (denying notice of documents cited only in reply).

- **Exhibits 77 and 78**, which were challenged in Plaintiff's motion, are analyst reports from just before and after the final corrective disclosure that Defendants improperly submit for their truth, namely to show that "the market anticipated" that Defendants' margin target was "ambitious." MtS.Opp.7. But these analysts reported that "the scale of the hit to margins *far exceed[ed]*" their expectations. Ex. 78. These exhibits are also contradicted by other contemporaneous analyst commentary. *See* MTD.Opp.23-24.

Defendants claim that each of these exhibits is permissibly cited to "establish the undisputed public record." MtS.Opp.7. However, as discussed above, each of the purported "facts" and related inferences that Defendants extract from these exhibits is disputed, precluding judicial notice, and is otherwise inconsistent with the very documents from which those facts are sourced. *See In re Energy Recovery Inc. Sec. Litig.*, 2016 WL 324150, at *3 (N.D. Cal. Jan. 27, 2016) ("truth

or falsity of the statements contained in the analyst reports is not a proper subject of judicial notice.").[5]

> **B.    Defendants' SEC Filings, Transcripts, And Presentations Should Not Be Judicially Noticed For Their Contested Facts**

Defendants claim that **Exhibits 16, 17, 21, and 22** may be noticed because they are presentations, call transcripts, and SEC filings, which are the documents that are typically subject to notice. MtS.Opp.7. But again, Defendants improperly seek to extract facts from these documents and have the Court accept those facts as true. MtS. 5-16; *Roth v. Jennings*, 489 F.3d 499, 509 (2d Cir. 2007) (SEC filings not noticeable "to prove the truth of their contents"); *accord Medallion Fin. Corp.*, 2022 WL 3043224, at *2 ("[T]he Court should not find facts by weighing competing inferences on a motion to dismiss.").

Defendants seek notice of **Exhibit 92**, which is AutoNation's annual report (MtS.Opp.7), to establish that incentives and bonus programs are not "unusual." This contradicts the Complaint's allegations that Stellantis's incentive programs were unusual and unprecedented, as Defendants acknowledged. Ex. 94 ("I don't know that this has *ever* been done."). Moreover, courts decline to notice SEC filings of companies that are not a defendant. *See PTC Therapeutics*, 2017 WL 3705801, at *3 n.5.

---

[5] Defendants suggest in footnotes that Plaintiff's motion to strike makes an end-run around the Court's page limits. MtS.Opp.7 n.11; 9 n.15. Plaintiff's motion fully complies with the procedural rules, and had Defendants attempted to make the requisite judicial notice showing in their brief, Plaintiff would have addressed those arguments in its opposition brief. Defendants' authorities, which concerned an unrelated procedural question of whether a motion to strike is the appropriate mechanism for responding to a motion to dismiss or required, unlike here, a pre-motion conference prior to filing a motion to strike, are inapposite.

9

C.      **Defendants' News Articles, Websites, And Industry Data Sources Are Not Subject To Judicial Notice**

Without specifying which Exhibits are noticeable under which doctrine or citing any relevant authority, Defendants claim that **Exhibits 81–85**, **87–90**, **95–96**, **99–101**, **and 105–115** are properly noticed because they either show what information was publicly available or establish judicially noticeable facts. However, Defendants do more than introduce these exhibits for the fact of publication, and their tautological reasoning does not support notice here.

- **Industry and Stellantis Incentives, Exhibits 81, 84-85, 88, 90 95, 96, 105, and 106.** These news articles, advertisements, and other public sources are not sources of unquestionable accuracy. FRE 201. The facts plucked therefrom include that bonus and CTP programs are not "unusual," Ex. 81, or "standard market practice," Ex. 84, and that vehicles in CTP have to be "used," Ex. 88, among others. *See Lee v. Springer Nature Am., Inc.*, 769 F. Supp. 3d 234, 248 (S.D.N.Y. 2025) (declining notice because "[a] defendant may not short-circuit the summary judgment process by introducing disputable facts… simply because they are stated on a website.").

- **Operational Metrics, Exhibits 85, 95, 99, and 101.** Defendants contend that these sources "all show Stellantis's average transaction prices available through the *Kelly Blue Book*." MTS.9. But Exhibit 85 does not. Nor is the *Kelly Blue Book* a source of unquestionable accuracy. *See Lee*, 769 F. Supp. 3d at 248. Indeed, the Complaint disputes the accuracy and probative value of these statistics given the impact of Stellantis's misuse of the CTP program on days' supply. MTD.Opp.9, 34-35.

- **Dealer Announcement. Exhibit 112** is a Stellantis Fleet promotion effective for the month of *April 2025*, which is therefore irrelevant to the incentives Stellantis offered and publicly disclosed during the Class Period. Defendants' failure to submit the *actual* promotions and dealer incentives that existed during the Class Period is telling.

- **Macroeconomic Factors, Exhibits 111 and 113-15.** Defendants do not meaningfully respond to Plaintiff's arguments establishing that macroeconomic indicators may not be judicially noticed to establish an alternate chain of causation. *See* MtS.16-17; s*ee, e.g.*, *2007 Novastar Fin.*, 2008 WL 2354367, at *1 ("[T]he Court cannot use that fact to infer anything in particular about a business operating at the time."). These exhibits, which Defendants improperly introduce to assert that Stellantis's inventory problems were due to factors other than Defendants' channel-stuffing (MTD.Opp.19), must be stricken on this basis.

10

### D.    Defendants' Uncited Exhibits Should Not Be Noticed

Finally, **Exhibits 36, 57, 63, 72, and 103**[6] are not properly before the Court as Defendants' briefing does not reference them. MtS.Opp.10. Accordingly, these documents are irrelevant and should be stricken. *Green v. City & Cnty. of San Francisco*, 2021 WL 3810243, at *4 (N.D. Cal. Aug. 26, 2021) (declining notice of uncited documents).

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant Plaintiff's Motion to Strike.

Dated: November 25, 2025

BERNSTEIN LITOWITZ BERGER
 & GROSSMANN LLP

By: /s/ *Rebecca E. Boon*
Salvatore J. Graziano
Rebecca E. Boon
Alec T. Coquin
Rebecca S. Temkin
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
salvatore@blbglaw.com
rebecca.boon@blbglaw.com
alec.coquin@blbglaw.com
rebecca.temkin@blbglaw.com

*Attorneys for Lead Plaintiff Boston
Retirement System*

---

[6] Defendants have withdrawn Exhibit 93.

11

## ATTORNEY CERTIFICATION PURSUANT TO LOCAL RULE 7.1(c)

I, Rebecca E. Boon, an attorney licensed to practice law in the State of New York, certify that the foregoing Reply Memorandum of Law complies with the word-count limitations set forth in Local Rule 7.1(c) of this Court. According to the word count tool of the word-processing system used to prepare this Memorandum of Law, this Memorandum of Law contains 3,499 words, excluding the caption, table of contents, table of authorities, glossary of citation conventions, signature block, and this Certification.

*/s/ Rebecca E. Boon*
Rebecca E. Boon